[Civ. No. 45922. First Dist., Div. Four. Sept. 1, 1981.]

WALTER CAMP et al., Plaintiffs and Appellants, v.
BOARD OF SUPERVISORS OF MENDOCINO COUNTY et al.,
Defendants and Respondents;
R. O. HURT et al., Real Parties in Interest and Respondents.

[Civ. No. 48356. First Dist., Div. Four. Sept. 1, 1981.]

THE PEOPLE ex rel. GEORGE DEUKMEJIAN, as Attorney
General, etc., Plaintiff and Respondent, v.
COUNTY OF MENDOCINO, Defendant and Appellant.

[Civ. No. 48357. First Dist., Div. Four. Sept. 1, 1981.]

TAMARA ADAMS et al., Plaintiffs and Respondents, v.
COUNTY OF MENDOCINO et al., Defendants and Appellants.

COUNSEL

Bryan W. Gaynor for Plaintiffs and Appellants.

John A. Drummond, County Counsel, Stephen D. Underwood, Deputy County Counsel, Thomas M. Stanton and Raymond & Stanton for Defendants and Respondents and for Defendants and Appellants.

George Deukmejian, Attorney General, R. H. Connett, Assistant Attorney General, Roderick E. Walston, Donatas Januta and David W. Hamilton, Deputy Attorneys General, Burgess Williams, Stephens & Williams and Alexander T. Henson for Plaintiffs and Respondents.

Richard C. Burton for Real Parties in Interest and Respondents.

OPINION

**RATTIGAN, J.**—The Planning and Zoning Law (Gov. Code, tit. 7, div. 1, commencing with § 65000) required in 1978 (as it does now) that the board of supervisors of each county adopt a general plan for the "physical development" of the county, pursuant to section 65300; that the plan be prepared and adopted according to standards established in sections 65300.5 and 65301; and that it include each of nine "elements" enumerated and described in section 65302.[1] As the result of several enactments adopted over a course of years, the Board of Supervisors of the County of Mendocino (hereinafter Board and County) had by 1978 compiled a so-called "Mendocino County General Plan" pursuant to the mandate of section 65300. In each of three separate superior court actions commenced in that year, the contention was made that the plan was invalid because some of its elements did not meet the requirements of section 65302.

---

[1]Except where otherwise indicated, statutory citations are to provisions of the Government Code as they read in 1978. Chapter 3 of the Planning and Zoning Law (tit. 7 ["Planning and Land Use"], div. 1 ["Planning and Zoning"], ch. 3 ["Local Planning"])

The first action filed (No. 39640) was heard and decided by a judge who rejected the contention, determined that the plan complied with section 65302, and entered a judgment which held in effect that the plan was valid and denied the relief sought in this action. The other two actions (Nos. 40626 and 40633) were heard and decided by a different judge, who reached diametrically opposite conclusions and entered judgments to the effect that the plan was invalid.

The captioned appeals are from the three judgments, of which the first is irreconcilable with the other two. Each appeal involves points associated with the action in which the respective judgment was entered, but we have consolidated all three because they present the common question whether the County's general plan was valid in 1978. We have concluded that it was not. We accordingly reverse the judgment entered in action No. 39640, and affirm the other two judgments with modifications, all as set out in necessary detail below. We commence by summarizing the pleadings and the chronological sequences of the three actions as shown by the extensive (4,500-page) record.

### Action No. 39640

On February 7, 1978,[2] a majority of the Board approved a tentative map presented by R. O. Hurt and Robert Kolsters for the proposed

---

commenced with section 65100, which provided in pertinent part: "By ordinance the legislative body of each county and city shall establish a planning agency. . . ." Sections 65300, 65300.5, 65301, and 65302 appeared in article 5 of chapter 3. In full or in pertinent part, they read as follows:

"65300. Each planning agency shall prepare and the legislative body of each county and city shall adopt a comprehensive, long-term general plan for the physical development of the county or city . . . ."

"65300.5. In construing the provisions of this article, the Legislature intends that the general plan and elements and parts thereof comprise an integrated, internally consistent and compatible statement of policies for the adopting agency."

"65301. The general plan shall be so prepared that all or individual elements of it may be adopted by the legislative body, and so that it may be adopted by the legislative body for all or part of the territory of the county or city. . . ."

"65302. The general plan shall consist of a statement of development policies and shall include a diagram or diagrams and text setting forth objectives, principles, standards, and plan proposals. The plan shall include the following elements: [¶] (a) A land use element . . . . [¶] (b) A circulation element . . . . [¶] (c) A housing element, . . . . [¶] (d) A conservation element . . . . [¶] (e) An open-space element . . . . [¶] (f) A seismic safety element . . . . [¶] (g) A noise element . . . . [¶] (h) A scenic highway element . . . . [¶] (i) A safety element . . . ."

Section 65302 is not quoted in full because of its length. Some of the passages deleted here are quoted later in the text.

[2]Dates mentioned refer to the calendar year 1978 except where indicated otherwise.

subdivision of a parcel of land in the County known as "Waunita Meadows." Walter Camp and others challenged the Board's decision, and commenced action No. 39640, by filing a petition in the superior court on March 9. The Board and its members were named in the petition as the "Respondents" in the action. Hurt and Kolsters were named as "Real Parties in Interest."

As pertinent here, the petitioners alleged in several counts that they brought the action as "residents, taxpayers, and property owners of the County ...."; that the Board, "in violation of law," had "failed to adopt a comprehensive, long-term, general plan with elements that comply with the provisions" of section 65302 in that the land use, housing, and circulation elements of the Mendocino County General Plan were deficient in specified respects; that the Board's action in approving the tentative subdivision map on February 7 had been in violation of sections 66473.5 and 66474 because the Board "could not make the requisite finding of consistency with a general plan...";[3] and that the Board's failure "to adopt adequate findings as required" by sections 66473.5 and 66474 constituted a "prejudicial abuse of discretion." The petitioners also alleged that the Board's action had been "arbitrary and capricious," and that they were accordingly entitled to an award of attorneys' fees pursuant to section 800.

On the basis of these and related allegations, the petitioners prayed for a declaratory judgment to the effect that the County's general plan was invalid for failure to comply with section 65302; for the issuance of a peremptory writ of mandate ordering the Board to set aside its decision approving the tentative map of Waunita Meadows; for preliminary and permanent injunctions restraining the Board "from approving and processing other... tentative and/or final maps until such time as the Mendocino County General Plan shall comply with the provisions" of section 65302; for an award of attorneys' fees; and for related and general relief.

---

[3]Sections 66473.5 and 66474 appear in the Subdivision Map Act (div. 2 of tit. 7, commencing with § 66410). They provided in 1978 as follows: "66473.5. No local agency shall approve a map unless the legislative body shall find that the proposed subdivision... is consistent with the general plan required by Article 5 (commencing with Section 65300) of Chapter 3 of Division 1 of this title...." (See fn. 1, *ante*.)

"66474. A legislative body of a city or county shall deny approval of a final or tentative map if it makes any of the following findings: [¶] (a) That the proposed map is not consistent with applicable general and specific plans...."

The County and the real parties in interest filed answers to the petition in April. The action was heard and orally argued on April 14. The court received in evidence a collection of documents certified to constitute the "Mendocino County General Plan." Documentation of the action taken by the Board on February 7 was also received, and the action was submitted.

In May, the court filed a memorandum decision in which it stated its determination (among others) that the County had "adopted all of the required elements" in its general plan, that the plan was "adequate," and that the petitioners were to "take nothing" in the action. The court filed findings of fact and conclusions of law to these effects on August 4. It thereupon entered a judgment denying any and all of the relief prayed in the petition.

The petitioners filed a timely notice of appeal from this judgment on October 16. The ensuing appeal became 1 Civil 45922 in this court. The County and real parties in interest Hurt and Kolsters have appeared on it as the respondents.

### The Successive Actions (Nos. 40626 and 40633)

On May 22, a three-member majority of the Board approved a tentative map presented by Robert E. Harrah for the proposed subdivision of a tract of land in the County known as "Eden Valley Ranch." This determination was challenged in action No. 40626, which was commenced when Tamara Adams and others filed a petition in the superior court on November 17. The Attorney General challenged the Board's determination, and commenced action No. 40633, by filing a petition on November 20.

The "Respondents" named in the petition in action No. 40626 were the County and the three members of the Board majority who had voted approval of the tentative subdivision map on May 22. The Attorney General named the County as the "Respondent" in action No. 40633. Harrah was named as "Real Party in Interest" in both petitions. With appropriate variations, each of these pleadings closely followed the format of the petition with which action No. 39640 had been commenced eight months earlier. The petitioners in action No. 40626 alleged their standing as "residents and taxpayers" of the County and as "property owners in close proximity" to Eden Valley Ranch. The Attorney General alleged in his petition that he brought action No. 40633 as the "Chief

Law Officer of the State," who "has the power and is charged with the duty to file any civil action which he deems necessary for the protection of public rights and interest." He further alleged that "[i]t is the concern of the People of the State of California that the laws and legislative policies of this State be enforced. . . ."

Both petitions included allegations to the effect that the Board had violated state law by failing to adopt a general plan containing all of the elements required by section 65302. The petitioners in action No. 40626 specified deficiencies in the housing, land use, open-space, circulation, and noise elements of the general plan then in effect. In action No. 40633, the Attorney General cited deficiencies in the land use, housing, and noise elements of the plan. It was alleged in both petitions that the Board's action approving the tentative map of the proposed Eden Valley Ranch subdivision had consequently been taken in violation of sections 66473.5 and 66474. (See fn. 3 and the accompanying text, *ante.*) The petitioners in action No. 40626 also alleged that they were entitled to an award of attorneys' fees, pursuant to section 800, because the Board's action had been "arbitrary and capricious."

The Attorney General's petition in action No. 40633 concluded with a prayer for the issuance of an alternative writ of mandate commanding the County to "rescind its approval" of the tentative map of the proposed Eden Valley Ranch subdivision, or to show cause why it had not done so and why a peremptory writ should not issue; for a peremptory writ of mandate, to be issued after a hearing, compelling the County "to vacate permanently its approval" of the tentative map and "to amend its general plan to conform to the legal requirements" of section 65302; for preliminary and permanent injunctions "enjoining respondent from approving any subdivision maps . . . unless and until the . . . Board . . . duly adopts amendments to the County's general plan to bring it into compliance with the requirements of State law"; and for costs and general relief. The petition in action No. 40626 concluded with a substantially identical prayer in which the petitioners also requested an award of attorneys' fees.

When action No. 40626 was commenced on November 17, the court ordered a hearing on December 1 "to determine if an Alternative Writ of Mandamus should issue" in the action. When the Attorney General commenced action No. 40633 on November 20, the court issued an "Alternative Writ of Mandamus" commanding the County to appear on December 1 and show cause why it should not be ordered to set aside

the action taken by the Board on May 22. The Attorney General also noticed a "Motion for Preliminary Injunction" in action No. 40633 and set it for hearing on December 1.

The County filed answers in both actions on November 29, pleading material admissions and denials and several affirmative defenses. The three hearings set for December 1 in the two actions were called by Judge Golden on that date and proceeded as a single hearing.[4] Counsel for all parties to both actions were present and participated. The collection of documents described as the "Mendocino County General Plan," which had been reviewed in action No. 39640, was again received in evidence. Documentation of the Eden Valley Ranch subdivision proceedings was also received. All matters pending in the two actions (Nos. 40626 and 40633) were submitted at the conclusion of the hearing.

On December 20, the court filed an order in action No. 40633 stating its determination "that there shall be issued forthwith in this proceeding a preliminary injunction" restraining the County, its agencies, or personnel from approving tentative or final subdivision maps, parcel maps, or proposals for zoning or rezoning. On January 2, 1979, the court issued a "Preliminary Injunction" ordering those restraints and additionally enjoining the "aforementioned entities" of the County from "accepting applications for subdivisions," from approving any such applications already on file, and from "accepting for review or from approving any certificates of compliance under ... section 66499.35 for property that has been subdivided in violation of the Subdivision Map Act, ... [¶] ... pending the further order of this Court."

On February 23, 1979, the court filed separate memorandum decisions in the two actions. The two decisions were overlapping but coordinated, and each was separately addressed to its respective action in exhaustive detail. In the two decisions between them, the court stated its determinations that the land use, housing, and noise elements of the Mendocino County General Plan failed to meet the requirements of section 65302 in specified respects; that the deficiencies were such that the plan was invalid for lack of compliance with controlling law; and that,

---

[4]Judge Golden announced at the outset that the hearings in the two actions (Nos. 40626 and 40633) were being convened "simultaneously, for the convenience of the court and the parties." The single hearing was conducted accordingly, and without objection, but the two actions were never consolidated. Judge Golden presided in both at all times on or after December 1, 1978. He was not involved in action No. 39640, which had been heard and decided by then as previously described.

"[s]ince the subdivision map of Eden Valley Ranch subdivision was approved at a time when there existed no adequate general plan, that approval was unlawful and must be set aside."

The court directed in each decision (1) the issuance of a peremptory writ of mandate, in the respective action, compelling the County "to vacate its approval of the tentative subdivision map" and "to enact a general plan conforming to the requirements of ... sections 65300, 65300.5, 65301, and 65302" (see fn. 1, *ante*); and (2) the issuance of a permanent injunction in the action restraining the County, its agencies, and its personnel in the same respects as those enjoined in the "Preliminary Injunction" issued on January 2, 1979, "until there is in effect in Mendocino County a general plan" conforming to the same statutory requirements. In the decision filed in action No. 40626, the court also stated its determinations that the action taken by the Board on May 22 had not amounted to "arbitrary or capricious conduct" within the meaning of section 800, and that the petitioners' "request for attorneys' fees is disallowed."

The court subsequently filed findings of fact and conclusions of law, in each action, consistent with its respective memorandum decision. On May 16, 1979, a judgment was entered in each action pursuant to the respective findings and conclusions. With appropriate changes and elaborations, paragraph 1 of each judgment orders the issuance of a peremptory writ of mandate directed to the County in substantially the language we have previously quoted from the memorandum decisions. Paragraph 2 of each judgment orders the issuance of a permanent injunction restraining the County, its agencies, and personnel in language substantially adapted from the preliminary injunction issued in action No. 40633 on January 2, 1979. Some specific provisions of the judgments are quoted later in this opinion.

The County filed a timely notice of appeal from each judgment. Its appeal from the judgment in action No. 40633 is 1 Civil 48356, on which the Attorney General has appeared as the sole respondent. The petitioners in action No. 40626 appear as the respondents on 1 Civil 48357, which is the appeal from the judgment entered in that action.[5]

---

[5]Notices of appeal from both judgments were also filed by Robert E. Harrah, who appeared below as the real party in interest in the two actions. We ordered these appeals dismissed on February 5, 1980, after Harrah's attorney formally advised us that they would not be pursued. The County also filed notices of appeal from the order made on December 20, 1978, and from the preliminary injunction issued on January 2,

Pursuant to a stipulation by the parties to these two appeals, we made an order consolidating them on February 5, 1980.[6] Pursuant to another stipulation by the same parties, we made an order on June 4, 1980, staying the injunctive provisions of both judgments subject to detailed conditions.[7]

REVIEW

1 CIVIL 48356 AND 48357

We consider these appeals first for convenience. The points raised on them are separately captioned below.

### The Trial Court's Determination That the Mendocino County General Plan Is Invalid for Lack of Compliance With Section 65302

The trial court found that the land use, housing, and noise elements of the plan were "inadequate" because none comported with the detailed standards prescribed for it in section 65302. The court concluded from these findings that the plan was "therefore invalid as a general plan . . . ."

---

1979, in action No. 40633. The County subsequently filed in this court a notice of abandonment which operated as a dismissal of these appeals pursuant to rule 19(a), Cal. Rules of Court. Still other notices of appeal filed by the County will be discussed when we reach them.

[6]The subject of consolidation was raised in this court after the parties to the first appeal (1 Civil 45922) had completed its briefing. Although the briefing on the other two appeals was trailing by several months, counsel for the appellants on 1 Civil 45922 moved this court for an order consolidating all three appeals. The motion was supported by a stipulation among some of the parties to be affected, but not all of them. We held it in abeyance pending the briefing on the later appeals, which we expedited. Pursuant to a subsequent stipulation by the parties to those appeals (only), we made the order consolidating them on February 5, 1980, for briefing, argument, and decision. We continued to withhold action on the proposed consolidation of 1 Civil 45922, pending our examination of all three appeals for similarity of issues. We have now consolidated it with the others on our own motion.

[7]The order involves stipulated activity by the State Office of Planning and Research (see §§ 65027, 65040 et seq., 65302.6), which is in effect permitting and overseeing subdivision and related proceedings in the County pending the development of a general plan in conformity with law. The principal features of the order include provisions for controlled exceptions from the injunctions in individual cases. The record also shows that the trial court itself has granted approximately 90 so-called "hardship exemptions" from the injunctions.

■ The County takes the initial position that the court's examination of the plan for "adequacy" constituted an impermissible inquiry into its "merits." This argument is based on the following language used by the Supreme Court in *Selby Realty Co.* v. *City of San Buenaventura* (1973) 10 Cal.3d 110 [109 Cal.Rptr. 799, 514 P.2d 111]: "The adoption of a general plan is a legislative act. Since the wisdom of the plan is within the legislative and not the judicial sphere, a landowner may not maintain an action in declaratory relief *to probe the merits of the plan* absent allegation of a defect in the proceedings leading to its enactment." (*Id.*, at p. 118 [italics added].)

The County's argument ignores the language we have emphasized in the foregoing quotation. The petitioners in these two actions (Nos. 40626 and 40633) did not undertake to "probe the merits" of the Mendocino County General Plan. They sought relief in mandamus, and by way of injunction, because of specific defects in elements of the plan which allegedly made it "inadequate" and void for lack of compliance with law. The remedy of mandamus is available "to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust or station . . . ." (Code Civ. Proc., § 1085.)

Section 65302 enumerates the nine elements which a plan "shall include," and describes the contents of each. The word "shall" is to be construed as mandatory in this context. (Gov. Code, §§ 5, 14.) The County must accordingly "have a general plan that encompasses all of the requirements of state law." (*Save El Toro Assn.* v. *Days* (1977) 74 Cal.App.3d 64, 72 [141 Cal.Rptr. 282].) If the plan adopted for it does not reflect substantial compliance with those requirements, the Board and other responsible agencies of the County have failed in the "performance of an act which the law specially enjoins."

"Substantial compliance, as the phrase is used in the decisions, means *actual* compliance in respect to the substance essential to every reasonable objective of the statute," as distinguished from "mere technical imperfections of form." (*Stasher* v. *Harger-Haldeman* (1962) 58 Cal. 2d 23, 29 [22 Cal.Rptr. 657, 372 P.2d 649] [italics in the original]; *International Longshoremen's & Warehousemen's Union* v. *Board of Supervisors* (1981) 116 Cal.App.3d 265, 273 [171 Cal.Rptr. 875].) The judicial inquiry undertaken here was a necessary examination of the Mendocino County General Plan for substantial compliance with the statutory requirements, not an impermissible study of its "merits." We

turn to the three elements of the plan which the trial court found wanting.

### The Land Use Element

■ Section 65302, subdivision (a), provided in 1978 that a general plan mandated by section 65300 "shall include . . . [a] land use element which designates the proposed general distribution and general location and extent of the uses of the land" for specified purposes. It also provided that the land use element itself "shall include a statement of the standards of population density and building intensity recommended for the various districts and other territory covered by the plan."

The land use element of the Mendocino County General Plan is set out in a separate pamphlet which reproduces a typewritten text published in 1967.[8] A prefatory summary states that the land in the County is classified into 12 different types of "area," each of which is described and identified by a name associated with the predominant "land use" within it (e.g., "conservation, public lands," "conservation, water development," "agricultural, intensive," "suburban, residential," "urban, city"). This classification is depicted on an accompanying map of the County entitled "Land Use And Recreation Elements [,] General Plan of Mendocino County, California." The map places every location in the County within delineated contours of one of the classified types of area.

Figures of population density are stated for only two of the types of "area" where the several types are classified and described. A table elsewhere in the pamphlet recites "density standards" of population in terms of "persons per square mile," but these figures are tabulated for each of four "land use categories" respectively entitled "urban centers," "fringe urban and minor urban," "dispersed residential," and "agricultural." There is no perceptible connection between these "density standards" and any of the classified types of "area," nor between the

---

[8]It may be mentioned that the "plan" consists of a sheaf of uncoordinated documents stuffed into an unlabelled carton. The trial court observed in one of its memorandum decisions as follows: "Presented to the court with the representation that it constituted the Mendocino County General Plan was a somewhat crumpled grey cardboard box . . . containing an unassembled assortment of papers and pamphlets variously identifed . . . [by titles or descriptions] .... [¶] The physical composition of this 'general plan' would appear to make resort to it for planning information an awkward exercise and would also seem to generate doubt concerning the integrity of the plan, when so many of its elements are merely deposited loose in a cardboard box." We agree with these comments.

types of "area" (which are described and mapped) and the tabulated "land use categories" (which are not). It is consequently impossible to relate any tabulated "density standard" of population to any location in the County.

The pamphlet states nothing at all of "building intensity" standards in any of the classified types of "area," nor in any of the tabulated but undescribed "land use categories," nor at any location in the County. For these reasons, the land use element is not in substantial compliance with the requirement of section 65302, subdivision (a), that it "include a statement of the standards of population density and building intensity recommended for the various districts and other territory covered by the plan."

### The Housing Element

■ Section 65302, subdivision (c), provided in 1978 that a general plan mandated by section 65300 "must include . . . [a] housing element, to be developed pursuant to regulations established under Section 41134 of the Health and Safety Code, consisting of standards and plans for the improvement of housing and for provision of adequate sites for housing."[9] It further provided that the housing element "shall make adequate provisions for the housing needs of all economic segments of the community."

The so-called "housing element" of the Mendocino County General Plan is briefly outlined in a separate pamphlet published in 1970. (See fn. 8, *ante.*) The cover page of the pamphlet is labelled "The Housing Element of the General Plan," but its text repeatedly describes it as the

---

[9]The reference to "regulations established under Section 41134 of the Health and Safety Code" was not current in 1978. Health and Safety Code section 41134, which was enacted in 1975, provided that the Department of Housing and Community Development "shall adopt guidelines for the preparation of housing elements required by Section 65302" of the Planning and Zoning Law. (Stats. 1975, First Ex. Sess. 1975-1976, ch. 1, § 7, pp. 3876-3877.) Section 41134 was repealed in 1977 (Stats. 1977, ch. 610, § 1, p. 1998), but the repealing enactment reenacted it as Health and Safety Code section 50459 without changing its language. (*Id.*, § 2, pp. 2015-2016.) A conforming amendment of section 65302, subdivision (c), was not adopted until 1979, when it was amended to provide that the housing element required of a general plan was "to be developed pursuant to regulations established under Section 50459 of the Health and Safety Code . . . ." (Stats. 1979, ch. 591, § 1, p. 1846.) Regulations adopted by the Department of Housing and Community Development pursuant to the successive statutes are presently in effect as "State Housing Element Guidelines." (Cal. Admin. Code, tit. 25, § 6400 et seq.; see *id.*, § 6402.) They have been in effect since long before 1978. (See *id.*, § 6478.)

"*Initial* Housing Element . . . ." (Italics added.) It also states that the first of its "Housing Objectives" is the "[p]reparation of a comprehensive County-wide Housing Element of the General Plan," and that "[t]he 1970 census . . . will provide current data for the ultimate Housing Element." Although the results of the 1970 census have been available since 1971, there is no indication that the "ultimate Housing Element" has ever been prepared or pursued. The pamphlet thus defines itself as something much less than the reasonably complete and current housing element required by section 65302, subdivision (c).

The trial court also found that the element did not comply with the standards established in the "regulations" of the Department of Housing and Community Development cited in section 65302, subdivision (c). (See fn. 9, *ante.*) Regardless of whether these regulations were "advisory" or mandatory in the preparation of a housing element for inclusion in a general plan required by section 65300 (see *Bownds* v. *City of Glendale* (1980) 113 Cal.App.3d 875, 886 [170 Cal.Rptr. 342]), the court properly resorted to them for the purpose of determining whether the County's housing element substantially complied with the requirements of section 65302, subdivision (c). We have examined them for the same purpose.

The element amounts to an inventory of housing in the County as of 1970. It otherwise does not approach meeting the standards suggested in the regulations or mandated by the statute. In terms of the regulations, for example, it includes no semblance of a "comprehensive problem-solving strategy" for the County's housing (see Cal. Admin. Code, tit. 25, § 6408; *id.*, § 6416, subd. (b)) and nothing by way of a long-term projection of "[p]rospective need for market-rate housing." (See *id.*, § 6438, subd. (a).) In terms of the statute (which is mandatory even if the regulations are not), the element does not include "standards and plans for the improvement of housing and for provision of adequate sites for housing" or anything reasonably to be construed as "adequate provision for the housing needs of all economic segments of the community." Because of these deficiencies and its obsolescence in point of time, it does not represent substantial compliance with the requirements of section 65302, subdivision (c). (See, and compare, *Bownds* v. *City of Glendale, supra*, 113 Cal.App.3d 875 at p. 884.)

### The Noise Element

■ Section 65302, subdivision (g), provided in 1978 that a general plan mandated by section 65300 "shall include . . . [a] noise element,

which ... quantifies the community noise environment in terms of noise exposure contours for both near-and long-term levels of growth and traffic activity." In additional language too lengthy and technical to warrant quotation here, the statute defined an array of other factors which the element "shall include" (or which "must be presented" or "must be shown" in it).

The so-called "noise element" of the Mendocino County General Plan is set out in a separate pamphlet which shows that it was adopted by the Board in 1976. (See fn. 8, *ante*.) It includes no "noise exposure information ... presented" in the technical nomenclature ("CNEL" and "Ldn") required by the third unnumbered paragraph of section 65302, subdivision (g). It shows nothing "determined by monitoring" with regard to "areas deemed noise sensitive" as required by the next paragraph of the statute. It does not include a "community noise exposure inventory, current and projected," as required by the paragraph after that. For these reasons and others, it does not substantially comply with the requirements of section 65302, subdivision (g). The County asserts that it is "certainly adequate for [a] quiet rural county such as Mendocino," but the test is neither geographical nor subjective: it is purely statutory, and the County has failed it.

### The Consequences of These Deficiencies

With some variations, the trial court accurately cited the foregoing deficiencies in the land use, housing, and noise elements of the Mendocino County General Plan in detailed findings of fact made in each of the two actions (Nos. 40626 and 40633). The court thereupon drew similarly detailed conclusions of law, four of which (Nos. 14 through 17) are quoted in the margin.[10] Nos. 14 and 15 are supported by the findings. Nos. 16 and 17 are correct statements of the law applicable to

[10]These conclusions of law were drawn in each of the two actions, as follows:

"14. Mendocino County does not have a sufficient land use, housing, or noise element so as to either literally or substantially comply with the provisions of ... section 65302 concerning the necessary components of land use, housing, and noise elements.

"15. The Mendocino County General Plan is therefore invalid as a general plan meeting the requirements of ... section 65302.

"16. Since the subdivision map of Eden Valley Ranch ... was approved at a time when there existed no adequate general plan, the Board ... could not have legally found the subdivision consistent with the requisite general plan and thus that approval was unlawful and must be set aside.

"17. Since the County lacks a valid general plan, the County may not lawfully approve any subdivision or parcel map or enact any zoning ordinance or issue any certificates of compliance or certificates of approval."

the facts found. (*Save El Toro Assn.* v. *Days, supra*, 74 Cal.App.3d 64 at pp. 70-74.) The judgment entered in each action is therefore supported by the findings and conclusions which preceded it. We turn to the County's additional arguments, which fall into the two categories captioned below.

### Miscellaneous Claims of Error

■ The County contends that the judgments invalidating the Mendocino County General Plan in these actions (Nos. 40626 and 40633) were barred, on theories of res judicata and collateral estoppel, by the contrary judgment previously entered in action No. 39640. The earlier judgment is under review on 1 Civil 45922, and we reach it later in this opinion. It is patently not final for purposes of res judicata or collateral estoppel. (See *Wood* v. *Herson* (1974) 39 Cal.App.3d 737, 745-747 [114 Cal.Rptr. 365]; 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, §§ 163 [p. 3307], 197 [pp. 3335-3336.) This contention is specious.

■ The County also urges that the judgment in action No. 40633 was barred because the Attorney General (the petitioner in that action) failed to exhaust administrative remedies when the Board approved the tentative map of the proposed Eden Valley Ranch subdivision.[11] The Attorney General is constitutionally designated as the "chief law officer of the State" (as he styled himself in his petition), and he is constitutionally obligated "to see that the laws of the State are uniformly and adequately enforced." (Cal. Const., art. V, § 13.) He "has broad powers derived from the common law, and in the absence of legislative restriction, has the power to file *any civil action* or proceeding directly involving the rights and interests of the state, or which he deems necessary for *the enforcement of the laws of the state*, the preservation of order, and the *protection of public rights and interests.*" (Italics added.) (*Pierce* v. *Superior Court* (1934) 1 Cal.2d 759, 761-762 [37 P.2d 453, 460, 96 A.L.R. 1020] [quoted with approval in *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 14-15 [112 Cal.Rptr. 786, 520 P.2d 10]; see also 58 Ops.Cal.Atty.Gen. 21, 27 (1975).) The exhaustion doctrine cannot be applied against him in the procedural context shown here. (Cf. *Environmental Law Fund, Inc.* v. *Town of Corte Madera* (1975) 49 Cal.App.3d 105, 111-114 [122 Cal.Rptr. 282].)

---

[11]It is undisputed that the petitioners in action No. 40626 exhausted their administrative remedies in the proceedings mentioned.

■ The County contends that the trial court "abused its discretion" in entering either judgment without ordering the joinder of more than 100 land developers who had received subdivision approval at various stages before the first injunction was issued. The court found in this regard as follows: "There are no indispensable parties who have not been joined in this action in that the relief petitioners seek may be granted in its entirety with the parties already before the court. While additional parties may be slightly affected by this adjudication it is not practical to join each and every landowner or ... holder of a tentative subdivision map as a party to these proceedings."

These findings are supported by the record, and they are decisive of the nonjoinder point. With the exception of the subdivision proceedings involving Eden Valley Ranch (the owner-subdivider of which was joined in both actions as the real party in interest), the relief sought in the two petitions did not involve the cancellation or suspension of any subdivision approval previously granted by the County. This factor distinguishes the decision on which the County principally relies for this point. (See *Sierra Club, Inc.* v. *California Coastal Com.* (1979) 95 Cal.App.3d 495, 501-502 [157 Cal.Rptr. 190].)

Nonparty subdividers of land in the County were "slightly affected" by the two actions (as the trial court found), to the extent that ongoing subdivision proceedings would—and will—be "affected" until the injunction is dissolved at such time as the County has adopted a valid general plan. Any problems in that regard have been avoided or diminished by the stay order to which the parties have stipulated and the trial court's indulgence in granting "hardship exemptions" from the injunctions in individual cases. (See fn. 7, *ante.*) The nonjoined subdividers may properly be classified as "necessary" parties, but they were not at any time "indispensable" within the meaning of the controlling statute. (Code Civ. Proc., § 389.) The trial court did not exceed its jurisdiction in proceeding without them, nor did it abuse its discretion by not pursuing the impractical prospect of joining them. (*Bank of California* v. *Superior Court* (1940) 16 Cal.2d 516, 523 [106 P.2d 879]; see also 3 Witkin, Cal. Procedure, *op. cit. supra*, Pleading, §§ 133-137, pp. 1805-1811.)

*The Propriety of the Injunctive*
*Relief Ordered in Both Actions*

The County's contentions in this regard are addressed to the provisions of paragraph 2, in each judgment, which enjoin it from conducting

subdivision and related proceedings until it has adopted a valid general plan. It first argues that injunctive relief was not available in either action, asserting that both were brought in mandamus; that mandamus is classified in the Code of Civil Procedure as a "special proceeding"; and that injunctive relief lies only in an "action" and not in a "special proceeding."

This argument misconstrues the petitions in the two actions, the relief actually granted in both, and the nature of injunctive relief as a *remedy*. Each petition included allegations which stated a cause of action for the issuance of a writ of mandamus, pursuant to Code of Civil Procedure section 1085, requiring the County (1) to vacate the Board's action approving the tentative map of the proposed Eden Valley Ranch subdivision on the ground that the action was void for lack of a valid general plan without which it could not lawfully be taken; and (2) to adopt a valid general plan as required by law.

■ Paragraph 1 of each judgment orders the issuance of a peremptory writ of mandate as prayed in both respects. The writ was properly sought and granted, in the first respect, on the basis that the action taken without a general plan was void for illegality. (Code Civ. Proc., § 1085; *Youngblood* v. *Board of Supervisors* (1978) 22 Cal.3d 644, 651, fn. 2 [150 Cal.Rptr. 242, 586 P.2d 556]; see *Bodinson Mfg. Co.* v. *California E. Com.* (1941) 17 Cal.2d 321, 328-330 [109 P.2d 935].) In the second respect, the writ was properly sought and granted on the ground that the adoption of a valid general plan by the County was to be compelled as the performance of a nondiscretionary "act which the law specially enjoins." (Code Civ. Proc., § 1085; *People* ex rel. *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480, 490-491 [96 Cal.Rptr. 553, 487 P.2d 1193]; *Fair* v. *Fountain Valley School Dist.* (1979) 90 Cal.App.3d 180, 186-187 [153 Cal.Rptr. 56].) Paragraph 1 of each judgment thus orders relief pursuant to the allegations of the respective petition stating a cause of action in mandamus.

■ Each petition also included allegations citing the illegality of the County's ongoing subdivision and related activity in the absence of a valid general plan, irreparable injury to be incurred by the respective petitioners in consequence, and the inadequacy of their remedies at law. The additional allegations entitled them to an injunction which they conceived and prayed as an *equitable remedy* to be exercised on the cause of action initially pleaded in mandamus. The remedy is granted in the injunctive relief ordered in paragraph 2 of each judgment.

"Injunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted." (*Shell Oil Co.* v. *Richter* (1942) 52 Cal.App.2d 164, 168 [125 P.2d 930]; accord, 3 Witkin, Cal. Procedure, *supra*, Pleading, § 679, pp. 2303-2304.) An injunction is authorized as a remedy, in "civil actions," by provisions appearing in part 2 of the Code of Civil Procedure (*id.*, § 525 et seq.).[12] The provisions of that code enabling a "special proceeding" in mandamus (§§ 1084-1097) appear in part 3 under title 1, a section of which has the effect of making injunctive relief available in the proceeding by incorporating "the provisions of part two of this code" as "rules of practice in the proceedings mentioned in this title."[13] (See 2 Witkin, Cal. Procedure, *op. cit. supra*, Actions, § 14, pp. 892-893.)

Injunctive relief was therefore available as a *remedy* in both of the actions under review (Nos. 40626 and 40633). It was properly sought and granted in each action under the circumstances attending the County's failure to have adopted a valid general plan. (*Friends of "B" Street* v. *City of Hayward* (1980) 106 Cal.App.3d 988, 997-999 [165 Cal.Rptr. 514].) Its validity is not affected by the statutory identity of the underlying action as a "special proceeding."

 The County also contends that the injunctive relief ordered in the judgments violates the "separation of powers doctrine" (see Cal. Const., art. III, § 3) because it amounts to judicial usurpation of the County's legislative prerogatives in the areas of subdivision and zoning. This argument is principally based on Code of Civil Procedure section 526, which provides that an injunction will not lie "to prevent" specified actions by public officers and entities.[14] The injunctive relief ordered

---

[12]These sections comprise chapter 3 ("Injunction") of title 7 ("Other Provisional Remedies In Civil Actions," commencing with § 501) of part 2 ("Civil Actions," commencing with § 307).

[13]Sections 1084 through 1097 comprise chapter 2 ("Writ Of Mandate") of title 1 ("Writs of Review, Mandate, and Prohibition," commencing with § 1067) of part 3 ("Of Special Proceedings of a Civil Nature," commencing with § 1063). Section 1109, which commences chapter 5 of title 1, reads in full as follows: "Except as otherwise provided in this title, the provisions of part two of this code are applicable to and constitute the rules of practice in the proceedings mentioned in this title." The "provisions of part two" enabling injunctive relief as a *remedy* in "civil actions" (i.e., § 525 et seq.) are "applicable" in a mandamus proceeding because the Legislature has not "otherwise provided" in title 1 of part 3.

[14]The statute reads in pertinent part as follows: "An injunction cannot be granted ... [¶] 4. To prevent the execution of a public statute by officers of the law for a pub-

here does not "prevent" lawful legislative action; it restrains action which will be unlawful as long as it is purportedly taken in the absence of a valid general plan which is prerequisite to its legality. Code of Civil Procedure section 526 has no application in these circumstances.

██ The County further asserts that the trial court fatally exceeded its jurisdiction by ordering permanent injunctive relief in both actions "on the basis of the evidence presented at the hearing on the preliminary injunction" and without conducting a "trial" in either action. (We here quote the County's brief. The reference to the "hearing on the preliminary injunction" is to the three-way hearing conducted in both actions during December of 1978.) In each of the two decisions cited for this point, it was held as a general rule that "unless based on stipulation or other satisfactory showings submitting the cause on the merits," a trial court is "without jurisdiction to determine the merits upon the hearing of a motion for a temporary injunction." (*Anderson* v. *Joseph* (1956) 146 Cal.App.2d 450, 454 [303 P.2d 1053]; *Paul* v. *Allied Dairymen, Inc.* (1962) 209 Cal.App.2d 112, 122 [25 Cal.Rptr. 595].) The County's reliance on these decisions is nevertheless misplaced for three reasons, each of which is an alternative ground of our decision on the point.

In the first place, the only substantive issue tendered in each of the two "special proceedings" in mandamus was whether the Mendocino County General Plan was valid for compliance with the requirements of section 65302. That issue was joined in the answers filed by the County before the three-way hearing was conducted. Its resolution required the trial court to receive the plan in evidence, to examine and interpret it in light of the requirements of the statute, and to decide a question of law without resort to extrinsic evidence. In these circumstances, the hearing itself was the "trial" of each of the special proceedings in mandamus on its merits. (Code Civ. Proc., § 1094; Cal. Civil Writs (Cont.Ed.Bar 1970) § 17.8, p. 407.) We have already seen that the injunctive relief later ordered was remedial in each proceeding and ancillary to it. The court properly ordered it without awaiting a "trial on the merits" which had already occurred.

Secondly, the *Anderson-Paul* rule itself provides that there is no jurisdictional defect in granting permanent injunctive relief without a

---

lic benefit; . . . [¶] 6. To prevent the exercise of a public or private office, in a lawful manner, by the person in possession; [¶] 7. To prevent a legislative act by a municipal corporation."

trial if a preliminary injunction has been ordered after a hearing and there is a "stipulation or other satisfactory showing" which warrants "submitting the cause on the merits." (*Anderson* v. *Joseph, supra*, 146 Cal.App.2d 450 at p. 454; *Paul* v. *Allied Dairymen, Inc., supra*, 209 Cal.App.2d 112 at p. 122.) The stated exception obviously presupposes that the court has *subject matter jurisdiction* to proceed. The trial court in these actions had that jurisdiction at all pertinent times during and after the hearing conducted in December of 1978. It was made to appear at the hearing that the limited question before the court was one of law alone, that it was to be resolved without extrinsic or additional evidence, and that there was accordingly no purpose to be served by a "trial" of either action in the future. This was a "showing" which avoided the inhibition of the *Anderson-Paul* rule by invoking its exception.

In the third place, the jurisdictional claim now asserted was not made in the trial court at any pertinent time. It was raised for the first time in an unsolicited letter written to this court by counsel for the County after both appeals had been briefed, argued, and submitted. The trial court had meanwhile proceeded in both actions, at exhaustive length, in the exercise of its undisputed subject matter jurisdiction; the County and respondents had participated in the proceedings; and respondents had fully briefed both appeals in reply to the opening brief filed by the County. We nevertheless had the parties brief the belated claim because of its jurisdictional dimensions. The additional briefing confirms—and we hold—that the County is estopped from making the claim under the circumstances described. (*In re Griffin* (1967) 67 Cal.2d 343, 347-348 [62 Cal.Rptr. 1, 431 P.2d 625]; *Klitgaard & Jones, Inc.* v. *San Diego Coast Regional Com.* (1975) 48 Cal.App.3d 99, 111-113 [121 Cal.Rptr. 650]; 1 Witkin, Cal. Procedure, *op. cit. supra*, Jurisdiction, § 224, pp. 758-759.)

### The Scope of the Injunctive
### Relief Ordered in Both Actions

The County's contentions regarding the scope of the injunctions are addressed to each of four specific features of paragraph 2 of each judgment. Paragraph 2(a)(1) enjoins the County from "[a]pproving any tentative subdivision maps, final subdivision maps, or parcel maps," until it has adopted a valid general plan. We have seen that a large number of proposed subdivisions were at various stages of approval when the preliminary injunctions were issued. There are thus many subdivisions for which the approval of final maps may be sought on the

basis of tentative maps which were subject to challenge, as in the case of Eden Valley Ranch, because they were approved when the County did not have a valid general plan.

In any such case, the Subdivision Map Act barred that or any other challenge unless it was raised in an "action or proceeding" which was commenced, and in which service of summons was "effected," within 180 days after the Board's approval of the particular tentative map. (§ 66499.37.) With regard to any such map *not* so challenged, the Board has a ministerial duty to approve a final map found to be in "substantial compliance" with it. (§ 66474.1; *Youngblood* v. *Board of Supervisors, supra*, 22 Cal.3d 644 at pp. 653-657.) The trial court thus could not enjoin the Board from approving a final map it finds to be in substantial compliance with a tentative map (1) which it had approved before the preliminary injunctions were issued in these actions and (2) which had not subsequently been challenged in a timely "action or proceeding" commenced pursuant to section 66499.37. The provision of paragraph 2(a)(1) enjoining the approval of "any" final subdivision maps is overbroad to the extent that it purports to reach maps meeting this description. Modification of the paragraph is ordered below.

Paragraph 2(a)(2) of each judgment enjoins the County from "[a]pproving any proposals for adopting or changing zoning" until it has adopted a valid general plan. The petitioners in action No. 40626 effectively abandoned pursuit of injunctive relief relative to "zoning" at the hearing conducted in December of 1978. The judgment in that action must accordingly be modified to delete the provisions presently appearing in its paragraph 2(a)(2), as ordered below. The same provisions were properly included in paragraph 2(a)(2) of the judgment in action No. 40633, and they will remain there.

Paragraph 2(a)(3) of each judgment provides that until the County has adopted a valid general plan it is enjoined from "[a]ccepting applications for subdivision approval or permitting any such application already received to be approved by operation of law pursuant to ... [sections] ... 65956, 66452.4, 66452.5 or 66458 ...." The cited statutes provide that various subdivision applications will be "deemed" approved (i.e., that they will be approved by operation of law) if the County fails to act on them within specified time limits. (See § 65956 in context with §§ 65927, 65950, and 65952; see also § 66452.4; § 66452.5, subd. (c); § 66458, subd. (b).) The County contends in effect that these statutes will result in "automatic approval of all

applications now on file" (i.e., of all subdivision applications which were pending when the preliminary injunctions were issued) because paragraph 2(a)(3) erroneously enjoins action on them.

The cited statutes would have that effect only if the County or its affected agencies were *authorized by law* to take action approving, conditionally approving, or disapproving the applications involved. (See, e.g., § 66452.4; *Benny* v. *City of Alameda* (1980) 105 Cal.App.3d 1006, 1112 [164 Cal.Rptr. 776].) We have seen that they are not authorized to take such action because—and for as long as—the County does not have a valid general plan. (*Save El Toro Assn.* v. *Days, supra,* 74 Cal.App.3d 64 at p. 74.) The statutes cited in paragraph 2(a)(3) will accordingly be inoperative while the injunctions are in effect. The paragraph is thus an inartfully worded attempt to reach that result by "enjoining" the County from permitting the statutes to operate. Because the other provisions of each injunction will accomplish this purpose, the paragraph is superfluous. Modification deleting it from each judgment is ordered below.

Paragraph 2(a)(4) of each judgment provides that until the County has adopted a valid general plan it is enjoined from "[a]ccepting requests for certificates of compliance pursuant to ... [section] ... 66499.35 for property that has been subdivided in violation of the Subdivision Map Act, ... or causing any such certificate to be issued or filed." Section 66499.35 is itself a provision of the Subdivision Map Act. As it applies to the present context, subdivision (a) of the statute provides that upon application by a landowner the County "shall" determine whether his land complies with the act and "shall" issue and record a certificate of compliance if it does. Subdivision (b) provides that if the County determines to the contrary it "may" issue a certificate for the land conditioned upon eventual compliance with provisions of the act as they would have applied at the time the owner acquired the land.[15]

---

[15]The statute provides in pertinent part: "66499.35. (a) Any person owning real property ... may request, and a local agency shall determine, whether such real property complies with the provisions of this division [i.e., of the Subdivision Map Act] and of local ordinances adopted pursuant thereto. Upon making such a determination the city or the county shall cause a certificate of compliance to be filed for record with the recorder of the county ....

"(b) If a local agency determines that such real property does not comply with the provisions of this division or of local ordinances enacted pursuant thereto, it may, as a condition to granting a certificate of compliance, impose such conditions as would have been applicable to the division of the property at the time the applicant acquired his in-

The County contends in effect that paragraph 2(a)(4) is erroneously overbroad because its injunction of the issuance of certificates of compliance "for property that has been subdivided in violation of the Subdivision Map Act" is contrary to the permissive provisions of section 66499.35, subdivision (b), which grant it the authority to issue a conditional certificate for land which "does not comply" with the act. (See fn. 15, *ante.*) We agree that the paragraph operates to restrain the County from exercising this authority. It is nevertheless a necessary feature of the broad injunctive relief which will maintain the status quo until the County has adopted a valid general plan. Nothing to the contrary has been shown. The provisions of paragraph 2(a)(4) are not overbroad.

For the reasons severally stated above, the judgment in these actions (Nos. 40626 and 40633) are to be affirmed with the modifications indicated.

### *Other Appeals Pending*

In June of 1979, the County noticed motions for modification of the injunctive provisions of the judgments entered in both actions. Each motion was based on a written stipulation between the County and the Attorney General (only) to the effect that the injunctions might be modified to permit specified subdivision and related activity on terms and conditions proposed in a letter written to the County by the State Office of Planning and Research. On July 12, 1979, after a hearing at which it intensively questioned counsel concerning the terms and effect of the stipulation, the trial court made orders denying the motion in each action. The County filed notices of appeal from both orders. It now contends that the court abused its discretion in denying the motions.

The conditions outlined by the State Office of Planning and Research in 1979 have expired by their own terms. We have previously described the stipulated order we made on June 4, 1980, staying both injunctions

---

terest therein, and which had been established at such time by this division or local ordinances enacted pursuant thereto. Upon making such a determination and establishing such conditions the city or county shall cause a conditional certificate of compliance to be filed for record with the recorder of the county . . . .

"Compliance with such conditions shall not be required until such time as a permit or other grant of approval for development of such property is issued by the local agency. . . ."

on conditions currently established and being enforced by the same agency. (See fn. 7 and the accompanying text, *ante.*) That order granted substantially the same relief which was denied on the motions for modification. The appeals from the orders of denial are accordingly moot. We dismiss them on that ground. The stipulated stay order made on June 4, 1980, should remain in effect until this decision becomes final. It is so ordered below as to 1 Civil 48356 and 48357.

## 1 CIVIL 45922

We turn to the judgment denying relief in action No. 39640. By reason of the issues tendered and joined in that action as described above, the judgment has the effect of validating the Mendocino County General Plan on the bases that its land use, circulation, and housing elements comply with the requirements respectively established in section 65302, subdivisions (a), (b), and (c). We have held on the other appeals that the land use and housing elements do *not* comply with the statutory requirements exacted of them. There is no substantive distinction between action No. 39640 and the others (Nos. 40626 and 40633) which would warrant reaching different results on this appeal as to either element. Reversal of the judgment in action No. 39640 is accordingly required unless cause to the contrary appears in the arguments made by the County or the real parties in interest as respondents on this appeal.

■ Only two of these arguments require discussion. It is first contended that the judgment should be affirmed because there is substantial evidence in support of "findings of fact" made by the trial court to the effects that the County "has officially and duly adopted a general plan" and that the challenged elements of the plan are "adequate." As was true in the other actions (Nos. 40626 and 40633), these determinations required the court to assess the pertinent provisions of the Mendocino County General Plan for compliance with statutory requirements but without resort to extrinsic evidence. The court was thus presented with questions of law alone, and its resolution of them is not binding on this court. (*Southern California Edison Co.* v. *State Board of Equalization* (1972) 7 Cal.3d 652, 659, fn. 8 [102 Cal.Rptr. 766, 419 P.2d 1014]; *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839].) For these reasons, the substantial evidence rule may not be invoked in support of its "findings" relative to the adequacy of the plan.[16]

---

[16]For the same reasons, such "findings" might properly have been designated as "conclusions of law" in all three actions. Mislabelling in this regard may nevertheless

Respondents also claim the benefit of a finding that the petitioners in action No. 39640 (the appellants on this appeal) were "estopped to challenge the approval of the Waunita Meadows subdivision on the grounds of nonconformance or inconsistency with the Mendocino County General Plan insofar as this issue was not raised before the Board" in the subdivision proceedings. This finding is unsupported by the record of the proceedings. The finding therefore fails to support the judgment.

It thus appears that the judgment must be reversed because the trial court erred in its determination that the land use and housing elements of the Mendocino County General Plan were "adequate." Its similar conclusions as to the circulation element of the plan must also be reviewed because the adequacy of that element is not involved on the companion appeals. Section 65302, subdivision (b), provided in 1978 that a general plan mandated by section 65300 "shall include ... [a] circulation element consisting of the general location and extent of existing and proposed major thoroughfares, transportation routes, terminals, and other local public utilities and facilities, *all correlated with the land use element of the plan.*" (Italics added.)

The Mendocino County General Plan includes a so-called "circulation element" which generally describes the various "facilities" mentioned. It does not expressly show any relationship between them and the so-called "land use element" of the plan, and the relationship may not be determined by construction because the latter element is utterly deficient in itself. The circulation element therefore falls short of compliance with section 65302, subdivision (b), because facilities shown in it are not "correlated with the land use element of the plan." The trial court erred in its determination to the contrary.

Reversal of the judgment will require the entry of a judgment to the opposite effect in action No. 39640. The new judgment must explicitly order the issuance of a peremptory writ of mandate commanding the County to vacate the decision approving the tentative map of the proposed Waunita Meadows subdivision. Whether it should incorporate other provisions from the judgments in the other actions (as modified below) is to be determined by the trial court upon application by any party to action No. 39640. Reversal of the present judgment in that ac-

---

be disregarded on appellate review. (4 Witkin, Cal. Procedure, *op. cit. supra*, Trial, § 323, pp. 3126-3128.)

tion will also revive appellants' request for an award of attorneys' fees. The new judgment may also dispose of that request if appellants pursue it. Proceedings in these respects are to be conducted on the remand ordered below.

This court's disposition follows:

In 1 Civil 45922, the judgment in action No. 39640 is reversed. The cause is remanded to the trial court with directions to conduct further proceedings consistent with this opinion.

In 1 Civil 48356, the appeal from the order made on July 12, 1979, is dismissed. The judgment in action No. 40633 is modified as follows: Paragraph 2(a)(1) thereof is reworded to read: "Approving any subdivision maps, parcel maps, or final subdivision maps except those found to be in substantial compliance with tentative subdivision maps which have not theretofore been challenged in a timely action or proceeding commenced and maintained pursuant to Government Code § 66499.37." Paragraph 2(a)(3) of said judgment is deleted. Paragraph 2(a)(4) of said judgment is renumbered accordingly. As so modified, the judgment is affirmed. The order made herein on June 4, 1980, shall remain in full force and effect until this decision becomes final. Respondent shall recover costs on this appeal.

In 1 Civil 48357, the appeal from the order made on July 12, 1979, is dismissed. The judgment in action No. 40626 is modified as follows: Paragraph 2(a)(1) thereof is reworded to incorporate the language of paragraph 2(a)(1) of the judgment in action No. 40633 as modified. Paragraphs 2(a)(2) and 2(a)(3) of the judgment in action No. 40626 are deleted. Paragraph 2(a)(4) of said judgment is renumbered accordingly. As so modified, the judgment is affirmed. The order made herein on June 4, 1980, shall remain in full force and effect until this decision becomes final. Respondents shall recover costs on this appeal.

Caldecott, P. J., and Christian, J., concurred.

Petitions for a rehearing were denied September 29, 1981, and the opinion was modified to read as printed above. The petition of real parties in interest and respondents in No. 45922 for a hearing by the Supreme Court was denied November 12, 1981.