Filed 9/9/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING,<br><br>    Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF KERN COUNTY,<br><br>    Respondent;<br><br>CATHY'S CREATIONS, INC., et al.,<br><br>    Real Parties in Interest. | F078245<br><br>(Super. Ct. No. BCV-17-102855)<br><br><br>**OPINION** |

-ooOoo-

ORIGINAL PROCEEDINGS; in mandate.  David R. Lampe, Judge.

Xavier Becerra, Attorney General, Michael L. Newman, Assistant Attorney General, Satoshi Yanai, Cherokee DM Melton and Katherine Lehe, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Freedom of Conscience Defense Fund, Charles S. LiMandri, Paul M. Jonna, and Jeffrey M. Trissell for Real Parties in Interest.

-ooOoo-

## INTRODUCTION

This writ presents a question whether the trial court improperly construed the effect of an entry of judgment in an action filed by the Department of Fair Employment and Housing (DFEH) under Government Code section 12974.[1]

Section 12974 permits the DFEH, during the course of its investigation of an administrative complaint, to seek a limited court order for provisional relief only, much like the provisional relief that may be sought under Code of Civil Procedure section 527. Indeed, any order for provisional relief granted under section 12974 is to be "issued in accordance with Section 527 of the Code of Civil Procedure." (§ 12974.) To determine whether such provisional relief should issue, courts consider the likelihood the plaintiff will prevail on the merits at trial, and the comparative interim harm the parties are likely to suffer if the relief is either denied or granted. (*IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 69–70.) The provisional relief granted under section 12974 is of limited duration, lasting only until final disposition of the administrative complaint. After completing its investigation of the complaint, the DFEH may elect to file suit under section 12965 for permanent relief on the claims stemming from the administrative complaint.

In this case, the underlying section 12974 civil action was initiated by the DFEH in December 2017 by a petition seeking provisional relief to temporarily enjoin Tastries and Catharine Miller from refusing to sell wedding cakes to same-sex couples.[2] The petition for relief was based on an administrative complaint filed with the DFEH by Eileen and Mireya Rodriquez-Del Rio, who alleged Tastries had refused to sell them a wedding cake based on their sexual orientation. Tastries maintained it could not be

---

[1]     All further statutory references are to the Government Code, unless otherwise indicated.

[2]     Catharine Miller owns and operates Tastries through a company called Cathy's Creations, Inc. (collectively referred to as Tastries).

compelled to create and design custom wedding cakes for same-sex weddings under California's public accommodation law, the Unruh Civil Rights Act,[3] because compelling such conduct would violate both the free exercise clause and the free speech clause of the First Amendment.

Tastries opposed the DFEH's requests for a temporary restraining order and a preliminary injunction, and both forms of provisional relief were denied by the court. By order in February 2018, the court denied the DFEH's preliminary injunction request based upon Tastries's purported UCRA violation, finding Catharine Miller had an absolute right to refuse to create and design wedding cakes for same-sex couples, which violated her sincerely held religious beliefs.

Thereafter, the DFEH agreed to entry of judgment in the section 12974 action. When the DFEH continued its investigation of the administrative complaint following the court's denial of provisional relief and its entry of judgment, Tastries filed a motion to enforce the judgment arguing the DFEH was precluded from continuing its investigation as the UCRA claim had been finally adjudicated, and judgment had been entered. The court agreed and, in September 2018, ordered that any further investigation by the DFEH be tailored "to the ascertainment and discovery of facts reasonably and rationally calculated to serve as the basis for an argument for modification of the judgment." The trial court also ordered that if the DFEH's investigation caused it to believe further enforcement was necessary, "then any such further proceeding should be brought before this court in the nature of action or petition for modification of the court's original judgment."

The DFEH then filed a petition with this court seeking the issuance of a writ of mandate directing the superior court to set aside and vacate its September 2018 order and enter a new and different order denying in full Tastries's motion to enforce the judgment.

---

**3** Civil Code section 51 (UCRA).

The DFEH asserts the trial court's order violated the separation of powers doctrine by proscribing the scope of the DFEH's statutorily required investigation of the administrative complaint, and improperly precluded the DFEH from filing a section 12965 civil action if the DFEH determined it necessary. The DFEH contends the trial court's view of its preliminary injunction order and the nature of the section 12974 action were erroneous, and the judgment in that action cannot preclude the DFEH from performing its statutory duties.

We agree with the DFEH, and its writ petition shall be granted. In considering the effect of its judgment, the trial court improperly construed its decision on the preliminary injunction request to be a final adjudication of the merits of the underlying administrative complaint. The court had neither jurisdiction under section 12974 nor any inherent authority to undertake a merits-based final determination of the issues in the context of deciding a preliminary injunction request. By erroneously construing its preliminary injunction order as a final adjudication of the merits, the trial court violated the separation of powers doctrine in limiting the scope of the DFEH's investigation and barring the DFEH from filing suit under section 12965.

Our decision to grant the DFEH's writ petition is focused narrowly on procedural grounds. We do not reach the merits of any constitutional question raised in the section 12974 action, which should have been considered only for the purpose of deciding whether provisional relief was warranted. Any merits-based determinations of the ultimate rights of the parties are to be made by the trial court in the first instance in the section 12965 action that is now pending before it.

**FACTUAL SUMMARY**

I.      **Facts Alleged in the DFEH's Section 12974 Petition for Provisional Relief**

Eileen and Mireya Rodriguez-Del Rio married in December 2016 and had planned to exchange public vows and host a traditional wedding reception in October 2017. In planning for the reception, the couple wished to order a wedding cake. In August 2017,

4.

after unsuccessful tastings at other bakeries, the couple visited Tastries to sample wedding cakes. They met with a Tastries employee named Rosemary, who provided them information about Tastries cakes. The couple selected a "simple cake design based on a cake they saw on display at the bakery, and booked a cake tasting" for the following week where they planned to complete the order and pay for the cake.

A week later, the couple arrived at Tastries along with Eileen's mother, Mireya's man of honor and his partner. They greeted Rosemary who apologized to Mireya and informed her that Rosemary's boss was taking over their order. Catharine Miller (Miller), Tastries's owner, asked them what they were looking for and Eileen explained they had already provided their details to Rosemary, and they were there for a tasting and to place an order for their wedding cake. Miller discussed pricing, and told the couple she would provide their order to a competitor bakery (Gimme Some Sugar) because Miller did not condone same-sex marriage. Miller explained to them she regularly refers wedding cake orders for same-sex couples to a competitor baker because she does not condone same-sex marriage. The couple, and the three others with them, left the bakery.

In October 2017, the Rodriguez-Del Rio couple filed a complaint with the DFEH alleging Tastries had violated the UCRA by refusing to provide full and equal services to the couple based solely on their sexual orientation. The DFEH began an independent investigation of the complaint and served discovery requests upon Tastries, along with a copy of the couple's complaint. Based on its preliminary investigation, which included interviewing the complainants and a former Tastries employee, and obtaining a statement from Eileen's mother, the DFEH asserted Tastries has refused to provide full service to same-sex couples since at least 2015. In its petition for provisional relief under section 12974, the DFEH noted it required additional time to complete further discovery, obtain Tastries's response to the complaint's allegations, and conclude its investigation.

## II.    Procedural Background

On December 13, 2017, while the DFEH's administrative investigation was proceeding, the DFEH filed a petition for provisional relief in the form of a temporary restraining order (TRO) and requested the issuance of an order to show cause regarding the entry of a preliminary injunction under section 12974. The request for a TRO was heard the next day on December 14, 2017, and was denied due to an insufficient exigency; but an order to show cause was issued as to why the DFEH's request for a preliminary injunction should not be granted.

On January 10, 2018, Tastries filed a demurrer to the petition, which the DFEH opposed. Tastries's demurrer and the DFEH's request for a preliminary injunction were heard together on February 2, 2018. Following the hearing, the court overruled Tastries's demurrer, denied the DFEH's request for a preliminary injunction, and ordered Tastries to file an answer within 20 days. In denying the DFEH's request for a preliminary injunction, the court concluded Miller's refusal to design and create the cake was protected by the First Amendment's free speech clause, and the DFEH had failed to establish the state had a sufficiently compelling countervailing interest to justify the intrusion into a protected right.

On February 9, 2018, Tastries filed an anti-SLAPP (strategic lawsuit against public participation) motion pursuant to Code of Civil Procedure section 425.16, which the DFEH opposed and argued, in part, the motion was moot because the relief sought in the DFEH's petition had already been denied.

Tastries's anti-SLAPP motion was heard on April 13, 2018, at which time the trial court also issued an order to show cause why judgment should not be entered. On May 1, 2018, the court issued a minute order denying Tastries's anti-SLAPP motion and stated that it was not fully satisfied with the alternative forms of judgment drafted by the parties. The court entered its own judgment in favor of Tastries; the notice of entry of that

judgment was served on May 9, 2018. The DFEH did not file a notice of appeal from the May 1, 2018, judgment.

Meanwhile, on April 30, 2018, the DFEH appealed the order denying its petition for a preliminary injunction, but the appeal was abandoned on June 13, 2018. Tastries filed a motion for attorneys' fees under Code of Civil Procedure section 1021.5 as the prevailing party on the DFEH's preliminary injunction request.

On July 6, 2018, the court issued an order denying Tastries's motion for attorneys' fees, which Tastries appealed. On July 19, 2018, pursuant to section 12963.1, the DFEH served subpoenas for sworn investigative interviews and production of documents on several witnesses, including Miller. Tastries refused to produce Miller or the other witnesses under its control.

On July 24, 2018, Tastries filed a motion to enforce the judgment, seeking an order that the DFEH cease its administrative investigation into whether Tastries violated the UCRA during the encounters with the Rodriguez-Del Rio couple on August 26, 2017. Tastries argued that because the DEFH had failed to appeal the order denying the application for preliminary injunction, res judicata and/or collateral estoppel barred the DFEH from completing its investigation or initiating a new civil action under section 12965.

On September 13, 2018, the court granted the motion in part. The court determined it had continuing equitable jurisdiction to enforce its decree and to ensure that the rights of the parties were maintained according to the court's judgment. The court further reasoned that because it had issued a final, merits-based decision and judgment on the preliminary injunction request, any further action by the DFEH would be limited and subject to the court's continuing jurisdiction. The court concluded the scope of the DFEH's continuing investigation must be tailored to the ascertainment of facts meant to support a motion to modify the judgment, and the court barred the DFEH from filing an action for permanent relief under section 12965.

7.

On October 16, 2018, the DFEH filed with our court a petition for writ of mandate. The DFEH asserts the trial court's September 13, 2018, order purported to limit the DFEH's statutory authority to execute its mandate to investigate and prosecute discriminatory practices that violate the Fair Employment and Housing Act (FEHA) was in excess of its jurisdiction, violates the separation of powers doctrine, and contravenes FEHA's clear and remedial purposes. The DFEH sought an immediate stay of the enforcement of the September 13, 2018, order pending the final disposition of the DFEH's writ petition.

On October 17, 2018, another panel of this court ordered a stay of the trial court's September 13, 2018, order pending resolution of the DFEH's writ petition. We later issued an order to show cause why the DFEH's writ petition should not be granted and ordered Tastries to file a return brief and the DFEH to file a reply brief responding to Tastries's return.

After we stayed enforcement of the trial court's September 2018 order, the DFEH filed a new action in Kern Superior Court, case No. BCV-18-102633, against Tastries under section 12965 for violation of the UCRA in refusing to sell the Rodriquez-Del Rio couple a wedding cake in August 2017. An amended complaint was filed by the DFEH in that action in November 2018, and Tastries filed an anti-SLAPP motion to strike the amended complaint, which the trial court denied.

During the briefing of this writ, Tastries filed a motion that we take additional evidence in consideration of the DFEH's writ petition pursuant to Code of Civil Procedure section 909, which the DFEH opposes. Tastries seeks admission of documents filed in the second action, including (1) the first amended complaint; (2) Tastries's anti-SLAPP motion and supporting papers; (3) the DFEH's opposition to the anti-SLAPP motion to strike, along with supporting papers; and (4) Tastries's reply brief and supporting documents, including evidentiary objections. Tastries endeavors to establish

that the DFEH's briefing in the second action "establishes conclusively that its continued investigation has revealed no new evidence which should change the legal result here."

The DFEH requests we take judicial notice of the existence of the trial court's order denying Tastries's anti-SLAPP motion filed in the second action. Tastries asserts the parties' papers regarding the anti-SLAPP motion in the second action establish the second action is not based on new or different facts that will make any difference to the trial court's original constitutional free-speech analysis. Tastries argues the anti-SLAPP briefing in the second action demonstrates the alleged factual disputes on which the DFEH relies to argue the trial court improperly entered its original judgment in the first action are not actually relevant factual disputes; and the DFEH is seeking to relitigate the merits of the trial court's original legal conclusions.

The DFEH opposes Tastries's motion to take additional evidence asserting it is tantamount to asking this court to make factual determinations regarding whether there are relevant and material factual disputes that could result in a different outcome on the trial court's constitutional free-speech analysis in rejecting the DFEH's request for a preliminary injunction. The DFEH maintains it is for the jury in the second action to decide the facts.

The DFEH's request for judicial notice is unopposed, and the trial court's order is subject to judicial notice under Evidence Code sections 452, subdivision (d), and 459. We grant the DFEH's request as to the existence of the trial court's March 2019 order on Tastries's anti-SLAPP motion to strike as well as the words contained in that document, but not the truth of any disputed or disputable facts therein. We consider Tastries's motion to take additional evidence in context below.

9.

**DISCUSSION**

## I. Legal Framework

### A. Antidiscrimination Provisions Enforced Under the FEHA

The UCRA guarantees every person in California "full and equal" access to "all business establishments of every kind whatsoever[]" and imposes a duty on business establishments to serve all persons without arbitrary discrimination. (Civ. Code, § 51, subd. (b).) The UCRA declares that all persons within the state are free and equal and, regardless of their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status, they are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever. (*Ibid.*)

The FEHA is a comprehensive statutory scheme designed to combat discrimination and is intended to "protect and safeguard the right and opportunity of all persons" to be free from discrimination. (*Brown v. Superior Court* (1984) 37 Cal.3d 477, 485.) The FEHA's remedial scheme is carried out in part by the DFEH, which is vested with authority to enforce state civil rights laws as "an exercise of the police power of the state for the protection of the welfare, health, and peace of the people of this state." (§ 12920.)

The UCRA is expressly incorporated into the FEHA through section 12948, which provides that "[i]t is an unlawful practice under" the FEHA "for a person to deny or to aid, incite, or conspire in the denial of the rights created by" the UCRA. Section 12930, subdivision (f)(2), authorizes the DFEH to "receive, investigate, conciliate, mediate and prosecute complaints alleging a violation of" the UCRA. Thus, any individual aggrieved by an alleged unlawful practice under the UCRA may institute a lawsuit against the alleged wrongdoer, or the aggrieved individual may file a verified complaint with the DFEH pursuant to section 12948. (Civ. Code, § 52, subd. (f).)

10.

When a complaint has been filed with the DFEH alleging facts sufficient to state a violation of the UCRA, the DFEH is required to "make prompt investigation" (§ 12963), and to gather all relevant evidence necessary to determine whether an unlawful practice has occurred (Cal. Code Regs., tit. 2, § 10026, subd. (d)). Within the scope of its administrative investigation, the DFEH may issues subpoenas for records or for the appearance and testimony of individuals at a deposition. (§ 12963.1.) FEHA vests jurisdiction with the superior courts to compel compliance with the DFEH's investigative efforts upon petition by the DFEH. (§ 12963.5.)

During its preliminary investigation, if the DFEH concludes that "prompt judicial action is necessary," the director or authorized representative "may bring a civil action for appropriate temporary or preliminary relief pending final disposition of such complaint." (§ 12974.) Any temporary restraining order or other order granting preliminary or temporary relief is to be issued in accordance with Code of Civil Procedure section 527, and may be brought in any county in which actions may be brought under subdivision (b) of section 12965. (§ 12974.)

If the DFEH determines the administrative complaint is valid, the DFEH is mandated to "immediately endeavor to eliminate the unlawful employment practice complained of by conference, conciliation, and persuasion." (§ 12963.7, subd. (a).) If alternative dispute resolution methods fail, "or in advance thereof if circumstances warrant," the DFEH's director may, in the director's discretion, "bring a civil action in the name of the [DFEH] on behalf of the person claiming to be aggrieved." (§ 12965, subd. (a).)

Section 12965 contains a mandatory dispute resolution requirement: prior to bringing a civil action under this section, the DFEH "shall require all parties to participate in mandatory dispute resolution in [the DFEH's] internal dispute resolution division … in an effort to resolve the dispute without litigation." (*Ibid.*; see Cal. Code

11.

Regs., tit. 2, § 10031, subd. (b) [civil action after complete investigation may only be filed if department has required mandatory dispute resolution].)

If an action is filed under section 12965, it is to be brought in any county in which the unlawful employment practices are maintained and administered, or in the county in which the person claiming to be aggrieved would have had access to public accommodation but for the alleged unlawful practice. (*Ibid.*) The action under section 12965 generally must be filed within one year after the filing of the administrative complaint. (§ 12965, subd. (a).)[4] Wide relief is available under section 12965 and may include any relief available to a private plaintiff or to a class. (§ 12965, subds. (a), (c).) The DFEH acts as a public prosecutor when it pursues civil litigation under the FEHA (*State Personnel Bd. v. Fair Employment & Housing Com.* (1985) 39 Cal.3d 422, 444), and it may seek remedies to "'vindicate' what it considers to be in 'the public interest in preventing … discrimination'" (*Dep't of Fair Employment & Hous, v. Law Sch. Admission Council, Inc.* (2013) 941 F.Supp.2d 1159, 1172).

**B.      History and Overview of Section 12974**

The DFEH is authorized to file suit to eliminate unlawful practices under the FEHA "in the name of the department on behalf of the person claiming to be aggrieved" under section 12965, subdivision (a).[5] There are two conditions precedent to filing a civil action under section 12965: (1) the DFEH must investigate the administrative complaint (§ 12963) and (2) the DFEH "shall require all parties to participate in mandatory dispute resolution in the department's internal dispute resolution division free of charge to the parties in an effort to resolve the dispute without litigation[]" (§ 12965, subd. (a)).

---

[4]      There are circumstances that may toll the time period in which to file a civil action under section 12965, such as where an action for compliance with administrative discovery requests was filed. (§ 12963.5, subd. (f).)

[5]      Actions may be filed by the DFEH on behalf and as representative of a group or class under section 12961. (§ 12965, subd. (a).)

Section 12974, on the other hand, provides that "[w]henever a[n administrative] complaint is filed with the department and the department concludes on the basis of a preliminary investigation that prompt judicial action is necessary to carry out the purpose of this part, the director or his authorized representative may bring a civil action for appropriate temporary or preliminary relief pending final disposition of such complaint." By its plain terms, section 12974 is expressly limited to an award of temporary or preliminary relief; it may be instituted on a preliminary investigation—not necessarily a completed one—and there is no mention of prior dispute resolution.

A better understanding of section 12974 may be gleaned from the context in which it was originally enacted. In 1980, the Legislature combined the Fair Employment Practice Act (Lab. Code, former § 1410 et seq.; Stats. 1980, ch. 992, § 11, p. 3166) and the Rumford Fair Housing Act (Health & Saf. Code, former § 35700 et seq; Stats. 1980, ch. 992, § 8, p. 3166.), and the two were recodified as the FEHA (Stats. 1980, ch. 992, § 4, p. 3140 et seq.). The FEHA created two administrative bodies: the DFEH (*id.*, p. 3140), whose function it was to investigate, conciliate, and seek redress of claimed discrimination (*id.*, p. 3145), and the Fair Employment and Housing Commission (FEHC), which performed adjudicatory and rulemaking functions (*id.*, pp. 3141, 3147–3148).

Under the statutory scheme, an aggrieved person could file a complaint with the DFEH (Stats. 1980, ch. 992, § 4, p. 3155), which the DFEH was to promptly investigate (*id.*, p. 3156). If the DFEH deemed the complaint valid, it was to seek to resolve the matter, in confidence, by conference, conciliation, and persuasion (*ibid.*). If that failed, or circumstances rendered those resolution attempts inappropriate, the DFEH was permitted to issue an accusation against the alleged wrongdoer to be heard and decided by the FEHC (*id.*, pp. 3156–3158). The DFEH was to act as prosecutor on the accusation and argue the complainant's case before the FEHC. (*Id.*, pp. 3157–3158); *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1383–1384.) The

13.

FEHC was then to decide the matter and issue written findings after hearing proceedings conducted pursuant to former part 1, title 2, division 3, section 12970, subdivision (a) of the Government Code. (Stats. 1980, ch. 992, § 4, p. 3158.)

In the alternative to issuing an accusation and prosecuting the administrative complaint before the FEHC, the DFEH could elect to issue a notice to the complainants of the right to file a civil suit on their own. (Stats. 1980, ch. 992, § 4, p. 3157.) The DFEH itself was not authorized to initiate a civil action for any permanent relief on behalf of any complainant to redress unlawful conduct. The DFEH was granted authority, however, to seek court orders during the pendency of the administrative proceedings to aid in its investigations, enforce settlements, and carry out the purposes of the FEHA. Section 12974, also originally enacted in 1980, was one of these provisions.

Section 12974 provided the DFEH with the power to bring a "civil action for appropriate temporary or preliminary relief pending final disposition" of the complaint filed with the DFEH. (Stats. 1980, ch. 992, § 4, p. 3159.) This permitted the DFEH to seek a judicial temporary or preliminary injunction order for the pendency of the administrative complaint and its adjudication by the FEHC. In practical terms, section 12974 was created as a procedural vehicle to obtain a judicial order it deemed necessary to carry out the purposes of the FEHA during the pendency of the DFEH's investigation and the FEHC's administrative adjudication, which was provisional relief the FEHC itself did not have the power to order.[6]

---

[6]     Also in 1980, a similar housing provision was codified at former section 12983. (Stats. 1980, ch. 992, § 4, p. 3161.) It allowed the DFEH, upon determining that probable cause existed for believing the allegations in an administrative complaint were true and constituted a violation of the FEHA, to bring "an action" in superior court to enjoin the owner of the property from taking further action until the department had completed its investigation and made its determination. (Stats. 1980, ch. 992, § 4, p. 3161.) As with section 12974, section 12983 was amended in 2012 to add only a unilateral attorneys' fees and costs provision when the DFEH is the prevailing parties for the purpose of granting provisional relief under this section. (See Stats. 2012, ch. 46, § 53.)

14.

In 2012, the Legislature significantly amended the FEHA and ended the FEHC's administrative adjudication of complaints. (Stats. 2012, ch. 46, § 53.) In lieu of administrative adjudication, the FEHA's amended provisions allowed the DFEH to file a civil action on behalf of the complainant under section 12965, on behalf of a group or class under section 12961, or to issue a right-to-sue notice (§ 12965, subd. (b)). The 2012 amendments to the FEHA left section 12974 intact, amending the section only to add a unilateral attorneys' fee provision in favor of the DFEH where a temporary or preliminary injunction sought under section 12974 was granted by a court. (§ 12974; see Stats. 2012, ch. 46, § 53.)

## II.     The Judgment May Not be Enforced As Ordered

### A.     The DFEH's Assent to Entry of Judgment Has No Estoppel Effect

#### 1.     Parties' Arguments

After the trial court denied the DFEH's request for a preliminary injunction, it issued an order to show cause as to why judgment should not be entered, and set a hearing. The DFEH did not file a brief, but agreed that judgment should be entered. The parties could not agree on the form of judgment, so they each filed proposed judgments. The court rejected both proposed orders and issued its own order of judgment.

Tastries argues that by silently acquiescing to the entry of judgment, the DFEH implicitly agreed that the dispositive issue of constitutional law—Tastries's affirmative defense—had been adjudicated. As the DFEH abandoned its appeal of the preliminary injunction order, it lost any ability to change the entry of the judgment. According to Tastries, it was only in response to the motion to enforce the judgment that the DFEH raised any of the arguments asserted in its writ petition. Tastries maintains this was simply too late: the DFEH should have raised its objections to the judgment at the time entry of judgment was expressly contemplated by the court and the parties.

The DFEH contends it has always made clear its position that a section 12974 action is not a means to adjudicate the merits of claims stemming from the administrative

complaint, but it was not until the court issued its September 2018 order on the motion to enforce the judgment that the court attempted to limit the DFEH's statutory authority to investigate and prosecute alleged discriminatory practices under section 12965. According to the DFEH, the court had never before indicated it would restrict the DFEH's administrative investigation or limit the DFEH to filing an action or petition for modification, instead of allowing a civil action under section 12965.

Tastries filed a sur-reply brief disputing that the trial court gave no indication it considered the matter finally decided at the preliminary injunction stage.[7] Tastries points to the case management conference hearing held in March 2018 where the trial court warned the DFEH it was unsure what the res judicata effect of its order would be, at least as to certain aspects of its decision.

### 2. Background

From the outset, the parties disputed the character of the civil action brought by the DFEH under section 12974. At the initial hearing on the DFEH's request for a temporary restraining order, Tastries argued there was no complaint filed on which the request for any type of temporary relief could rest—section 12974 authorizes a "civil action," and a civil action necessitates a complaint. The trial court observed the DFEH's petition seemed to be the functional equivalent of a complaint, and ordered that it be served with a summons to ensure jurisdiction had been properly conferred on the court.

Subsequently, Tastries filed a demurrer to the petition arguing there was no statutory basis for the petition; because section 12974 authorizes a "civil action," it must be initiated by a complaint. If the petition were deemed a complaint, Tastries argued it was fatally uncertain. The DFEH argued a civil action seeking provisional relief did not need to be initiated by a complaint, and the petition was unambiguous about the nature of the unlawful conduct alleged in the underlying administrative complaint. In its reply

---

[7] Tastries's motion to file an informal sur-reply brief is granted.

16.

brief, Tastries noted that the DFEH would "run afoul of the successive civil actions prohibition by asking this Court to adjudicate an adversarial dispute over a temporary injunction and then, later, filing another civil action asking another Court to adjudicate an adversarial dispute over a permanent injunction…. If the DFEH wants to adversarially prosecute [Tastries], it must let this Court govern that prosecution, and it gets only one civil action."

At the February 2018 hearing on Tastries's demurrer and the DFEH's request for a preliminary injunction, the DFEH's counsel argued that section 12974 allows the DFEH "to file an action, which can be initiated by a petition only for temporary relief by way of injunction pending the final disposition of the administrative complaint." The DFEH's counsel further argued that the DFEH was presented with difficulty in considering the section 12974 petition a civil complaint equivalent to an action under section 12965 because the DFEH was only in the preliminary investigation stages. Counsel argued a suit under section 12965 requires mediation before it could be filed, and so if section 12974 were considered a civil action on the underlying discrimination claim, then there was a question whether the DFEH could dispense with the mandatory mediation requirement.

Following the hearing, the demurrer was overruled and the motion for a preliminary injunction was denied; the DFEH was instructed to file a proposed order on the denial of its preliminary injunction request. The DFEH submitted a proposed order, but the trial court struck the following proposed language: "The DFEH brought this civil action pursuant to … section 12974, which authorizes 'a civil action for appropriate temporary or preliminary relief pending a final disposition of [a] complaint [filed with the DFEH.]' Because this Order denies the DFEH temporary or preliminary relief pending the DFEH's final disposition of the underlying administrative complaint, no relief remains available to the DFEH in this … section 12974 action."

17.

At a March 2018 case management conference, the parties discussed the language stricken from the DFEH's proposed order. The court explained the following:

> "I was aware of the issue, so to speak, when the order was presented to me, the DFEH and the State taking the position that the case was essentially over and the defendant objecting to that. I signed the order and struck the language proposed by the State. I did that simply because I believed that the issue that was being presented to me was not—I had not adjudicated it. In other words, it was not an issue that had been in my mind or in the Court's mind in rendering its ruling; and, therefore, I took no action with respect to it. That was essentially without prejudice.

> "But I thought it worthwhile to hold a case management conference because of the State's position and also because I think we all recognize that it's a somewhat unusual action, based as it is on a provision of the Government Code, the State having taken the position that since the statute—since the object of the statute is provisional relief, since provisional relief was denied, that the case is over; but it is an action, and my—I want to be very clear on what I'm saying here.

> "I have not—I have an open mind on all this, but I think you should be aware of the Court's state of mind as to why I struck the language. If the action—if essentially the plenary—the plenary trial is for provisional relief, then it seems to me that perhaps the trial has been had, in which case I suppose the disposition would be judgment for the defendant, but then the defendant may have certain rights here that arise by virtue of the action."

The DFEH's counsel indicated to the trial court that,

> "[I]t sounds like you understand our position, [Y]our Honor, and it's just the language of the statute says what it is. It's temporary or preliminary relief pending final disposition of the administrative complaint. You've denied temporary preliminary relief; so we just feel that this civil action has come to an end, and we go back to finish the investigation of the administrative complaints, and we'll make a determination in the future of whether or not we'll file a civil complaint.

> "And at that point, if we did, that would be a traditional civil complaint and just go forward how cases do; but at this point there is nothing left here to do because there's nothing—no other remedy for us to seek under the statute."

18.

The trial court responded that it was not sure what the res judicata effect would be "if it is a final disposition and if trial has been had and judgment should be rendered in favor of the defendant .…"

Tastries' counsel then argued as follows, in relevant part:

"What we're concerned about is in light of the fact that the Court has addressed the case on the merits, it really is ripe for a final judgment and not for the type of procedural posture that they're suggesting, that having basically lost on the merits, on the constitutional issues, that now they get to go back and finish their investigation and decide whether they're going to file yet another complaint against my client and have a second bite at the apple.

"We think the way this case has been presented—and we did think it was kind of a rush to judgment. If they didn't think they had finished their investigation, why were they seeking this type of drastic relief, but they did. And we had a full airing of the issues, and it resulted in a very detailed decision."

At the end of the hearing, counsel for the DFEH noted that it "still feel[s] like we're in limbo. I mean, I'm not sure procedurally what we need to do to put the issue before you so we can get kind of finality on this part—this civil action."

After an order to show cause why a judgment should not be entered, the parties filed proposed judgments, but the language proposed highlighted the different view each took of the nature of the underlying action and the effect of the court's order denying the preliminary injunction. Tastries proposed language that judgment be entered because the DFEH "cannot succeed as a matter of law on a claim for violation of the Unruh Civil Rights Act, Civil Code section 51." The DFEH requested entry of a judgment that was much more limited: "On … the [DFEH's] … section 12974 civil action: [¶] IT IS HEREBY ORDERED, ADJUDGED AND DECREED that judgment is entered in favor of … Cathy's Creations, Inc. dba Tastries and Catharine Miller, each party to bear its own costs and attorney's fees."

19.

The court issued a minute order indicating as follows:

> "The parties agree that judgment should be entered in this matter. The action was a unique matter brought pursuant to … section 12974. While that section provides that the DFEH may bring an 'action,' the 'plenary' relief provided in the 'action' is only provisional. This is unlike a typical request for preliminary injunction which may proceed to plenary trial even upon denial of provisional relief. It therefore appears that judgment should be entered. However, the court is not fully satisfied with the alternative forms of judgment crafted respectively by each of the parties. The court will prepare its own form of judgment."

The trial court then entered a judgment that provided, in relevant part:

> "On … the [DFEH's] civil action:

> "No Statement of Decision having been requested pursuant to Code of Civil Procedure section 632, and the matter having been tried in less than one day, therefore:

> "IT IS HEREBY ORDERED, ADJUDGED AND DECREED that judgment is hereby rendered and to be entered in favor of … Cathy's Creations, Inc., dba Tastries and Catharine Miller, and against … the [DFEH] for the reasons stated in the attached Order.

> "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that … Cathy's Creations, Inc. dba Tastries and Catharine Miller are deemed the prevailing party for purposes of the fight to recover litigation costs as permitted by law."

### 3. Analysis

The extensive discussions about the character of the action prior to entry of judgment indicate that, while both parties believed judgment was appropriate, they had very different conceptions of the nature of the action the DFEH had filed and the effect of a judgment on the administrative investigation and any subsequent civil action under section 12965. Nothing in the preliminary injunction order or the judgment entered expressly resolved this dispute or precluded the DFEH from completing its investigation of the underlying complaint or from filing a separate action under section 12965.

20.

It was not until the trial court determined the *effect* of the preliminary injunction order and the judgment thereon in ruling on Tastries's motion to enforce the judgment that it became clear the trial court viewed section 12974 as the functional equivalent of a civil action under section 12965, and that it viewed the preliminary injunction order and judgment thereon as an adjudication of the merits of the underlying discrimination allegations.

In its writ petition, the DFEH is not concerned *that* judgment was entered in the section 12974 case—the DFEH agreed to the entry of judgment. The DFEH objects to how the trial court construed the effect of that judgment in its subsequent ruling on the motion to enforce the judgment. Until the order on the motion to enforce the judgment, the DFEH was without indication the trial court would construe the preliminary injunction order and judgment in the expansive manner it did. Thus, the DFEH's agreement to the entry of judgment does not estop it from arguing the trial court erroneously construed the effect of the judgment in ruling on the motion to enforce the judgment.

We turn, therefore, to consider the DFEH's contention the trial court erroneously construed the effect of the preliminary injunction order and subsequent entry of judgment and therefore violated the separation of powers doctrine by improperly limiting the DFEH from performing its statutorily mandated duties.

B. **The Preliminary Injunction Order and Judgment Thereon Was Not a Final, Merits Adjudication of the Rights of the Parties**

The parties dispute the effect of the preliminary injunction order and the judgment thereon and whether, in its order on the motion to enforce the judgment, the trial court properly conscribed the scope of the DFEH's investigation and its ability to file a civil action for permanent relief under section 12965. We review the trial court's legal conclusions about the effect of its judgment under the de novo standard of review. (*Tom v. City and County of San Francisco* (2004) 120 Cal.App.4th 674, 678–679.) We also

21.

review de novo the trial court's interpretation of section 12974.  (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 800; *Union of Medical Marijuana Patients, Inc. v. City of San Diego* (2019) 7 Cal.5th 1171, 1183.)

For the reasons discussed below, the preliminary injunction order was not a merits-based adjudication of the administrative complaint allegations or Tastries's defense, nor could it be when the DFEH had not yet concluded its investigation, or had an opportunity to file a fully pleaded complaint seeking any permanent relief.  Added to that, the constitutional issue the trial court purported to finally decide is a matter of unsettled law which the United States Supreme Court has noted may turn on factual details, about which the DFEH had not yet had a full and fair opportunity to plead.  (See *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission* (2018) ___ U.S. ___, ___ [138 S.Ct. 1719, 1723] (*Masterpiece*).)  The trial court had neither jurisdiction under section 12974 nor any inherent authority under these circumstances to finally decide the rights of the parties in the context of denying a request for a preliminary injunction.

### 1.    Background

In the order on the motion to enforce, the court ruled as follows in relevant part:

> "In its opposition to the current motion, the DFEH refers to its [section] 12974 action as a 'preliminary injunction action' and that the court denied a 'motion for preliminary injunction.'  As the DFEH envisions it, it perceives the adjudication as 'preliminary,' and that it is further entitled to litigate 'unsettled constitutional questions at issue,' and to 'fully litigate them on the merits in a civil action for permanent relief' under section 12965.

> "The court does not view the matter as so limited.

> "The court did not deny a 'motion for preliminary injunction.'  As stated, the court ordered, adjudged, and decreed that judgment was rendered and entered in favor of [Tastries] for the reasons stated, that is, that [Tastries] held a fundamental constitutional right under the First Amendment to engage in the conduct which was the subject matter of the complaint.  In other words, [Tastries] admitted to the business practice complained of which this court recognized would be a discriminatory

practice under the [UCRA] absent constitutional protection.  As such, the court's determination was plenary in nature, based upon the defense at issue—a constitutional right.

"The fact that section 12974 and section 12965 both refer to a 'civil action' does not necessarily mean that the statutory scheme envisions two civil actions, particularly when both would be subject to the same rules of venue.  A common sense interpretation of these code sections under these circumstances is that one civil action is involved, and that section 12974 authorizes a filing earlier than contemplated by section 12965 where 'prompt judicial action is necessary.'

"Even if the current action filed by [the] DFEH were to be considered a petition for preliminary injunction, it does not mean that the court is without authority or jurisdiction to render a plenary decision.  Here, the parties did not undertake to litigate the matter presented to the court solely as a matter for preliminary determination.  Instead, both sides discussed the constitutionality of [Tastries's] conduct in a plenary manner.  When the parties choose to present a constitutional question upon uncontroverted facts to the court, the court is empowered to treat the matter as a plenary question.  (See *Eckl v. Davis* (1975) 51 Cal.App.3d 831, 835.)

"Further, the issue of whether to issue an injunction was ancillary to the basic question of law presented.  Injunction is not a cause of action—it is a remedy.  The court undeniably held both subject matter and personal jurisdiction.  [Tastries] admitted the conduct.  The sole question presented was a question of law—whether or not [Tastries was] entitled by constitutional right to engage in the conduct.  For this reason, there was a satisfactory showing to submit the cause upon the merits for plenary relief.  No purpose would be served by further trial to delay determination of the fundamental constitutional question."

The court acknowledged its judgment was "not a prohibitory injunction against the DFEH from fulfilling its statutory duties[,]" and that it was "necessarily founded upon the facts presented."  While the court stated the DFEH could proceed with its investigation, the court ruled "the scope of the DFEH investigation must be directed at the factual underpinnings of the court's judgment, and must be rationally and reasonably related to a basis for presenting evidence for modification of the court's judgment."  Further, the court stated that if the DFEH concluded further enforcement action were necessary under

23.

section 12965, "the DFEH should file the appropriate pleading asserting its claim with this court."

The DFEH argues this order erroneously interpreted section 12974 and improperly construed the order on the preliminary injunction and judgment thereon as a merits-based adjudication of the underlying administrative complaint allegations. The DFEH interprets section 12974 as a statutory tool the department may use as an aid to its administrative investigations and to carry out the purposes of the FEHA, but that seeking provisional relief under section 12974 does not place the allegations of the underlying administrative complaint before the court for a merits-based adjudication. This is so, the DFEH argues, because the provisional relief under section 12974 is authorized before the DFEH has completed its investigation and before dispute resolution has been undertaken—which is required for the DFEH to file a civil action for permanent relief on behalf of the complainant under section 12965.

According to Tastries, section 12974 permits the filing of a "civil action," and a civil action is initiated by a complaint, not a petition. The DFEH's petition was deemed the equivalent of a complaint, and it stated an UCRA claim. The claim was placed before the court on the DFEH's request for a preliminary injunction, it presented a pure issue of law on an undisputed factual record, the court made a merits-based decision that the claim could not succeed as a matter of law, and the DFEH agreed to the entry of judgment thereafter.

Tastries also contends that regardless of how the trial court construed sections 12974 and 12965, the court was empowered to render a merits-based decision on the preliminary injunction because it involved a singular issue of law which was decided without resort to extrinsic or additional evidence as none of the facts were disputed. Tastries maintains courts always have the power to dismiss an action to save protracted litigation when the issue is one of law (citing *Mast, Foos & Co. v. Stover Mfg. Co.* (1900) 177 U.S. 485, 494–495; *Camp v. Board of Supervisors* (1981) 123 Cal.App.3d 334, 357

24.

(*Camp*)); that if a trial court intends a final adjudication of the issues involved, a preliminary injunction decision will amount to a decision on the merits (*Bomberger v. McKelvey* (1950) 35 Cal.2d 607, 612 (*Bomberger*); and that other courts confronting issues similar to those involved here have deemed them ripe for early adjudication (citing *303 Creative LLC v. Elenis* (10th Cir. 2018) 746 Fed. Appx. 709, 710).

The DFEH responds that Tastries overstates the law allowing courts to render merits-based determinations on motions for preliminary injunctions, and argues the cases Tastries relies upon are distinguishable or inapplicable. The DFEH maintains it never stipulated to a merits-based adjudication of the allegations in the administrative complaint as set forth in the petition—it sought only a provisional remedy. The DFEH argues it consistently made clear its position that a section 12974 action was one for provisional relief only, that the administrative investigation was ongoing, and that the DFEH would determine in the future whether a civil action for permanent relief would be filed. According to the DFEH, there was no stipulation or other showing that would allow the superior court to determine the ultimate rights of the parties in response to the DFEH's request for a preliminary injunction. The DFEH asserts no preclusive effect arises from the court's preliminary injunction order as it was not merits-based or sufficiently final.

### 2. No Jurisdiction Under Section 12974 to Adjudicate Merits of Potential Claims Arising out of Administrative Complaint

As already noted, section 12974 states in relevant part that, "[w]henever a complaint is filed with the department and the department concludes on the basis of a preliminary investigation that prompt judicial action is necessary to carry out the purposes of this part, the director or his authorized representative may bring a civil action for appropriate temporary or preliminary relief pending final disposition of such complaint. Any temporary restraining order or other order granting preliminary or

25.

temporary relief shall be issued in accordance with Section 527 of the Code of Civil Procedure….”

In construing a statute, the task of the court is to determine and give effect to the Legislature’s intent.  (*Wells Fargo Bank v. Superior Court* (1991) 53 Cal.3d 1082, 1095.) Courts look first to the words of the statute, giving the language its usual, ordinary meaning (*Quintano v. Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1055), and construing the words in context “in light of the nature and obvious purpose of the statute where they appear[]” (*Decker v. City of Imperial Beach* (1989) 209 Cal.App.3d 349, 354).  Potentially conflicting statutes must be harmonized whenever possible. (*Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1086.)

“If there is no ambiguity in the language, we presume the Legislature meant what it said, and the plain meaning of the statute governs.”  (*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 1000 (*Hunt*).)  “Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose.” (*Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1063.)  Our central task is ascertainment of the legislative intent, including consideration of “the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.” (*Clean Air Constituency v. California State Air Resources Bd.* (1974) 11 Cal.3d 801, 814.)

Section 12974 authorizes the DFEH to seek only provisional relief, which includes a preliminary injunction.  In the usual context, a preliminary injunction is a provisional remedy meant to prevent harm or preserve the status quo pending a trial on the merits. (*Continental Baking Co. v. Katz* (1968) 68 Cal.2d 512, 528.)  Typically, it is not, in itself, a cause of action (*MaJor v. Miraverde Homeowners Assn.* (1992) 7 Cal.App.4th 618, 623); thus, ordinarily, a preliminary injunction may be sought only when the underlying cause of action on which the provisional remedy rests is presented for decision through

26.

the pleadings (*Moreno Mut. Irr. Co. v. Beaumont Irr. Dist.* (1949) 94 Cal.App.2d 766, 778 ["A preliminary injunction is warranted only if there is on file a complaint which states a sufficient cause of action for injunctive relief of the character embraced in the preliminary injunction."]; see generally Moore & Thomas, Cal. Civ. Practice (2020) Procedure, § 16:119).

Yet the provisional relief the DFEH is authorized to seek under section 12974 arises in a different procedural context from preliminary injunctive relief sought in other statutory or common-law actions. Neither the statute's use of the term "civil action" nor its reference to Code of Civil Procedure section 527, which is a procedural statute for seeking preliminary relief, can be reasonably construed to mean the case-initiating document in a section 12974 action must be a complaint, and that this complaint must necessarily plead all claims and forms of relief sought on the allegations of the underlying administrative complaint.

By its plain language, section 12974 is designed to allow the DFEH a temporary tool to carry out its duties and fulfill the purposes of the FEHA—no permanent relief is available under section 12974, and it may be initiated on the basis of a "preliminary investigation." It is also notable the provisional relief under section 12974 is not filed by the DFEH "on behalf of the person claiming to be aggrieved[]" or "on behalf and as representative of such a group or class[]" as the class/group and individual actions under sections 12961 and 12965 indicate. The absence of this language reinforces that the statute is meant as an aid to the DFEH's obligations to carry out the FEHA's provisions, and not as a means to adjudicate the merits of the potential claims arising from the administrative complaint.

In historical context, this becomes even more clear. In 1980, when the statute was enacted, the DFEH was not authorized to file civil actions on behalf of complainants in superior court to adjudicate the merits of the administrative complaint. While section 12974 allowed the DFEH to seek provisional relief in a "civil action," that could

27.

not have conferred jurisdiction on the trial court to adjudicate the merits of claims arising from the underlying administrative complaint. Adjudication of the underlying administrative complaint, as formulated by the DFEH in an accusation, was a power reserved to the FEHC in the first instance.

When the FEHA was amended in 2012, and the DFEH was authorized to bring civil actions on behalf of complainants rather than prosecute them before the FEHC, nothing in the substantive structure of section 12974 was amended. Eliminating the FEHC's adjudication role in 2012 did not magically confer broader jurisdiction on the trial courts to adjudicate claims arising out of an administrative complaint under section 12974. The Legislature authorized the DFEH to file civil actions for permanent relief on claims arising from the underlying administrative complaints under sections 12961 and 12965—it did not do so under section 12974, despite its use of the words "civil action" which have been contained in the statute since its enactment. (Stats. 1980, ch. 992, § 4, p. 3159.)

As the DFEH points out, the operation of section 12974 as an aid to the DFEH's obligation to carry out the purposes of the FEHA—and not as a civil action for merits-based adjudication of claims arising from the underlying administrative complaint—is not unique. Federal agencies are endowed with similar statutory tools to carry out the purposes of the federal acts under which they operate. For example, federal law allows the Equal Employment Opportunity Commission (EEOC) and the National Labor Relations Board (NLRB) to seek temporary or preliminary relief in federal court while administrative proceedings (agency investigation and/or adjudication) occur within the agency. Under Title 42 of the United States Code, section 2000e-5, subdivision (f)(2), the EEOC may bring an action solely for temporary or preliminary relief pending final disposition of an underlying administrative charge whenever it concludes on the basis of preliminary investigation that prompt judicial action is necessary to carry out the purposes of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.).

Similarly, the National Labor Relations Act (29 U.S.C. § 151 et seq.) mandates the NLRB to seek preliminary injunctive relief in federal court, pending final administrative adjudication by the NLRB, whenever the agency has reasonable cause to believe that certain unfair labor practices have occurred. (29 U.S.C. § 160, subd. (*l*).) When it was initially enacted, section 12974 served a nearly identical purpose to these two federal statutory provisions: to allow the DFEH to bring an action for temporary or preliminary relief, if necessary to carry out the purposes of the FEHA, pending the final disposition of the administrative complaint filed with the DFEH and adjudicated by the FEHC.

Tastries argues that because adjudication of the administrative complaint no longer occurs at the agency level before the FEHC, there is no reason why a trial court could not reach the merits of the claims arising from the administrative complaint as the court has jurisdiction to adjudicate those claims under section 12965. Beyond that section 12974 is a civil action expressly limited to provisional relief, and the language of the statute does not encompass such an adjudication by the trial court, there is a good reason why section 12974 does not operate this way: a merits adjudication of the claims arising from the underlying administrative complaint under section 12974 would create statutory conflicts with other provisions of the FEHA and the DFEH's obligations thereunder.

As already noted, before the DFEH initiates a civil action "on behalf of the person claiming to be aggrieved[,]" the DFEH is obligated to require all the parties to participate in mandatory dispute resolution in the department's internal dispute resolution division free of charge, in an effort to resolve the dispute without litigation. (§ 12965, subd. (a).) Section 12974 permits the DFEH to initiate a civil action "on the basis of a preliminary investigation" of the underlying complaint, without any reference to dispute resolution.

Interpreting section 12974 as authorizing a court to reach the merits of claims arising from the underlying administrative complaint would conflict with the DFEH's obligation to require the parties to participate in dispute resolution before suit is initiated, and would render that portion of section 12965 nugatory. (*Dyna-Med, Inc. v. Fair*

29.

*Employment & Housing Com.*, *supra*, 43 Cal.3d at pp. 1386–1387 [meaning of statute must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible].)

Such an interpretation would also conflict with the DFEH's statutory obligation to conduct its investigation and collect all the evidence it deems necessary to make a final decision whether to file a civil action under section 12965 or to issue a right-to-sue notice to the complainant. If the DFEH is necessarily placing the administrative complaint before the trial court for potential adjudication by filing a section 12974 action for provisional relief, the DFEH loses its ability to fully conduct its investigation, make an administrative determination about whether to initiate suit or issue a right-to-sue notice, and conduct mandatory dispute resolution before instituting a claim for permanent relief under section 12965.

Not only would this create conflicts within the statutory scheme, but it would render section 12974 essentially useless to the DFEH. (See generally *Williams v. Superior Court* (1993) 5 Cal.4th 337, 354 ["A court should not lightly adopt an interpretation of statutory language that renders the language useless in many of the cases it was intended to govern."].) If the DFEH has completed its investigation, made a decision on the administrative complaint, and conducted mandatory dispute resolution, it can always seek provisional relief in the context of a section 12965 action. However, if the DFEH is not yet ready to file a section 12965 action, but provisional relief is deemed by the DFEH to be immediately necessary, the DFEH will have no option—it will be forced to place the administrative complaint before the trial court without completing its investigation. The DFEH's investigation allows the department to fully plead all facts necessary to support its claims and make all relevant legal arguments about viability of the claims. Cutting short that investigation, the DFEH is precluded from fully pleading its case, which is an untenable result.

We cannot construe section 12974 to operate in a manner that conflicts with the DFEH's statutory obligations, interferes with its investigatory and administrative duties, and renders useless a statutorily granted provisional remedy meant to assist the department in carrying out the purposes of the FEHA. (See *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 ["An interpretation that renders related provisions nugatory must be avoided [citation] .…"].)

Tastries devotes a good amount of its briefing to providing background on the nature of a civil action under the Code of Civil Procedure, the one-judgment rule, and the rule against claim splitting.[8] Tastries argues the 2012 amendments to the FEHA required that certain actions be brought in court by civil action, rather than by accusation by the department. Thus, quoting from Tastries's brief, the DFEH is now "required to file lawsuits; and if it files a lawsuit, the trial court is fully within its rights to adjudicate it."

We understand Tastries's argument to be that because section 12974 refers to a "civil action," when the DFEH initiated a lawsuit under that section, it placed the merits of claims arising out of the underlying administrative complaint, which the parties all agreed included an UCRA claim, before the trial court for decision. According to Tastries, the UCRA claim was decided on its merits as a matter of law, and any further litigation of the same claim under section 12965 violates both the one-judgment rule and the rule against claim splitting.

---

[8] The one-judgment rule has been articulated as "a general rule there can be only one final judgment in a single action." (*Nicholson v. Henderson* (1944) 25 Cal.2d 375, 378.) "The primary right theory is a theory of code pleading that has long been followed in California. It provides that a 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty. [Citation.] The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action. [Citation.] A pleading that states the violation of one primary right in two causes of action contravenes the rule against 'splitting' a cause of action." (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 681.)

31.

We disagree. Section 12974 is not reasonably susceptible to an interpretation it is the functional equivalent of a civil action under section 12965 action because section 12974 refers to a "civil action," nor did that reference expand the trial court's jurisdiction to decide the merits of the underlying administrative complaint.

A civil action is designated so because of the form of relief sought, not based on the label the case-initiating document is given. (Compare Code Civ. Proc., § 22 ["An action is an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense."] with Code Civ. Proc., § 23 [a "special proceeding" is "[e]very other remedy"].) Tastries points out the only pleading recognized in a civil action is a "complaint." (Code Civ. Proc., § 422.10.) But, even so, the requirement of a "complaint" does not automatically mean section 12974 requires all claims arising from the underlying administrative complaint be placed before the court for adjudication on the merits. A "complaint" requires a statement of facts constituting the cause of action, and a demand for relief. (Code Civ. Proc., § 425.10, subd. (a)(1)–(2).) The facts constituting a cause of action under section 12974 will *relate* to allegedly unlawful practices under the FEHA in order to establish that provisional relief is "necessary [for the DFEH] to carry out the purposes" of the FEHA, but that does not mean the FEHA claims arising out of that conduct are before the court for merits-based adjudication.

For example, Code of Civil Procedure section 527.6, permitting temporary restraining orders for harassment, is a statute located in part 2, title 7, chapter 3 of the Code of Civil Procedure, which concerns civil actions. Although the request for such a temporary restraining order is initiated by "petition" (Code Civ. Proc., § 527.6, subd. (d)), the statute expressly refers to petition proceedings under this statute as "actions" (*id.*, subd. (x)(1)). Similar to section 12974, the petitions for temporary restraining orders under Code of Civil Procedure section 527.6 are to be issued in accordance with Code of

Civil Procedure section 527, subdivision (d), but no complaint is required nor does it place all claims arising from the underlying conduct before the court for adjudication.

A person may seek a temporary restraining order for harassment under Code of Civil Procedure section 527.6, subdivision (b) by alleging "a course of conduct," a "credible threat of violence," or "harassment" as defined by the statute. Those allegations may constitute completed unlawful civil or criminal acts, such as trespassing or assault; but, while those allegations may be necessary to establish the need for a restraining order, the court does not have jurisdiction to adjudicate those potential civil or criminal causes of action. The statute is designed to prevent threatened injury, it is not intended to punish the restrained party for past acts. (See *Scripts Health v. Marin* (1999) 72 Cal.App.4th 324, 332.)

In sum, the plain language of section 12974 is not susceptible to an interpretation that it authorizes a civil action for merits-based adjudication of claims arising from the underlying administrative complaint the DFEH is in the process of investigating. But even if there were an ambiguity in the statute in that regard, we cannot conclude the Legislature intended such a meaning. If statutory language is susceptible to more than one reasonable interpretation, courts must "select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute" and "avoid an interpretation that would lead to absurd consequences." (*Merced Irrigation Dist. v. Superior Court* (2017) 7 Cal.App.5th 916, 925.)

All that was discussed above supports the Legislature's intent that a civil action under section 12974 authorizes the DFEH to obtain provisional relief during the pendency of the administrative complaint, but not an intent to authorize a civil action for merits-based adjudication of the potential claims arising from the underlying administrative complaint. As a result, a judgment issued on a section 12974 civil action for provisional relief merely signals the end of that action—it is not a final judgment on

33.

the potential claims arising from the administrative complaint whose merits are evaluated for the limited purposes of deciding entitlement to provisional relief.

### 3. No Inherent Authority to Reach the Merits Under *Camp*

Tastries argues that no matter what the distinction between civil actions under sections 12974 and 12965, the trial court had inherent authority to reach the merits of the administrative complaint allegations set forth in the petition under the circumstances presented here. Specifically, Tastries contends a trial court may reach the merits of an underlying dispute in the context of a preliminary injunction hearing based on a stipulation of the parties or on a showing where it appeared at the hearing the question before the court was solely one of law, that could be resolved without extrinsic or additional evidence, and that no purpose would be served by a trial in the future.

Tastries notes the principle that adjudication of a preliminary injunction can reach the underlying merits of a claim is also widely developed in case law discussing collateral estoppel or issue preclusion. In that context, Tastries contends, courts frequently hold that the preliminary injunction order was sufficiently final and on the merits as to have preclusive effect.

In considering whether preliminary relief should be ordered, courts traditionally consider two interrelated factors: "The first is the likelihood that the plaintiff will prevail on the merits at trial. The second is the interim harm that the plaintiff is likely to sustain if the injunction were denied as compared to the harm that the defendant is likely to suffer if the preliminary injunction were issued." (*IT Corp. v. County of Imperial*, *supra*, 35 Cal.3d at pp. 69–70.)

As a general rule, the granting or denying of a preliminary injunction does not amount to an adjudication of the ultimate rights of the parties. (*Continental Baking Co. v. Katz*, *supra*, 68 Cal.2d at p. 528.) In fact, a court is typically "without jurisdiction to determine the merits upon the hearing of a motion for a temporary injunction and the orders purporting to do so are void." (*Anderson v. Joseph* (1956) 146 Cal.App.2d 450,

34.

454 (*Anderson*); see *Hunt*, *supra*, 21 Cal.4th at p. 999 ["In determining the propriety of preliminary relief, neither the trial court nor an appellate court may undertake a final adjudication of the lawsuit."].)

An order on a preliminary injunction is an interim order which "reflects nothing more than the superior court's evaluation of the controversy on the record before it *at the time* of its ruling; it is not an adjudication of the ultimate merits of the dispute." (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1109.) Moreover, the interim order on a preliminary injunction request normally has no res judicata effect: "'[A] request for temporary equitable relief pending the determination of a case on its merits is an entreaty to the court to exercise its discretion and a ruling thereon is not a determination of the merits of the case. [Citation.] Such a pretrial ruling may not be given issue-preclusive effect with respect to the merits of the action.'" (*Upland Police Officers Assn. v. City of Upland* (2003) 111 Cal.App.4th 1294, 1300.)

This framework is subject to a limited exception when there is a stipulation of the parties, or some other satisfactory showing, which warrants submitting the case on the merits at the preliminary injunction stage. (*Camp*, *supra*, 123 Cal.App.3d at pp. 357–358; see *Anderson*, *supra*, 146 Cal.App.2d at p. 454; *Paul v. Allied Dairymen, Inc.* (1962) 209 Cal.App.2d 112, 122.) In *Camp*, the court determined a preliminary injunction motion warranted a merits-based decision because the issue presented was one of law, it was resolved without extrinsic or additional evidence, and there was no purpose served by a trial on the action. (*Camp*, *supra*, at p. 358.)

Here, in weighing the DFEH's likelihood of success on the merits of an UCRA claim as alleged in the petition, the trial court concluded Miller's baking of a wedding cake constituted expressive conduct which fell within the ambit of protected speech under the First Amendment. The court reasoned, in part, as follows:

> "No artist, having placed their work for public sale, may refuse to
> sell for an unlawful discriminatory purpose. No baker may place their

35.

wares in a public display case, open their shop, and then refuse to sell because of race, religion, gender, or gender identification.

> "The difference here is that the cake in question is not yet baked. The State is not petitioning the court to order [Tastries] to sell a cake. The State asks this court to compel Miller to use her talents to design and create a cake she has not yet conceived with the knowledge that her work will be displayed in celebration of a marital union her religion forbids. For this court to force such compliance would do violence to the essentials of Free Speech guaranteed under the First Amendment.")

The court went on to explain, in part, as follows:

> "A wedding cake is not just a cake in a Free Speech analysis. It is an artistic expression by the person making it that is to be used traditionally as a centerpiece in the celebration of a marriage. There could not be a greater form of expressive conduct. Here, Rodriguez-Del Rio[] plan to engage in speech. They plan a celebration to declare the validity of their marital union and their enduring love for one another. The State asks this court to compel Miller against her will and religion to allow her artistic expression in celebration of marriage to be co-opted to promote the message desired by same-sex marital partners, and with which Miller disagrees."

The court concluded that the DFEH could not succeed on an UCRA claim "on the facts presented as a matter of law." But, in the court's subsequent order on the motion to enforce the judgment, it is clear the court viewed this as a final, merits-decision about the viability of any UCRA claim stemming from the underlying administrative complaint. In that order, the court explained that it had decided the "merits of the constitutional defense[]" at the preliminary injunction stage based on the facts presented, but it "was a plenary judgment, not a preliminary one[,]" and the judgment was "final" because it had not been appealed.

The DFEH argues the free speech issue presented in the section 12974 action was not a pure question of law, and asserts the court couched its ruling in terms of the "'facts presented[]'" and relied on Tastries's untested factual assertions whether or not Tastries's cakes were pre-made or custom-designed by Miller. The DFEH maintains it is a mixed question of law and fact whether the cakes Tastries refuses to sell to same-sex couples

36.

can be considered "'custom cakes'" such that they constitute artistic expression. Since the preliminary injunction was decided, the DFEH resumed its investigation and has developed additional facts that it contends establish the cake requested was not "custom" and, therefore, did not constitute expressive conduct protected by the First Amendment.

Tastries argues it is purely a question of law whether the Unruh Civil Rights Act may override Miller's First Amendment free speech rights in this context. Tastries states the court found factually that Tastries creates specially designed custom cakes, including wedding cakes; Miller does not deny that she refused to design and create a custom wedding cake for the Rodriguez-Del Rio couple. Legally, the court found that a wedding cake is not just a cake, but an artistic expression by the person making it, and that it traditionally serves as a centerpiece in the celebration of a marriage. The court concluded that the DFEH could not compel Miller to allow her artistic expression in celebration of marriage to be co-opted to promote the message desired by same-sex marital partners, with which Miller disagrees. Tastries argues any factual dispute about the degree of customization of the wedding cake is immaterial to the free speech expressive conduct analysis, so nothing new discovered by the DFEH in its continued investigation since the preliminary injunction stage makes any difference. The preliminary injunction order was a final, merits-based decision that the DFEH's UCRA claim was not viable in the face of Miller's constitutional free speech affirmative defense.

For all the reasons discussed above about the nature of section 12974, the court could not decide the merits of the potential claim stemming from the underlying administrative complaint—it simply was not before the court for a merits-based adjudication, and the court had no jurisdiction to decide the matter. But, even if the court's preliminary injunction order had not been rendered in the context of section 12974, it would still not qualify as a merits-based adjudication of the viability of the DFEH's UCRA claim under the exception articulated in *Camp*.

37.

It matters little that the trial court believed its determination of the viability of the DFEH's UCRA claim was "plenary" or a final decision as indicated by the trial court in its order on the motion to enforce the judgment. In *Bomberger v. McKelvey*, the court stated that "unless it appears that the court intended a final adjudication of the issues involved," a preliminary injunction order does not function as a decision on the ultimate rights of the parties. (*Bomberger*, *supra*, 35 Cal.2d at p. 612.) But, as explained in *State Bd. of Barber Examiners v. Star*, "[i]nsofar as th[is] statement from *Bomberger* implies the intent of the court may be controlling, it is dictum and we find no case using that as a criteria for giving ultimate effect to a preliminary injunction." (*State Bd. of Barber Examiners v. Star* (1970) 8 Cal.App.3d 736, 739 (*Star*).) The court reasoned that "[t]o allow the court, on its own, to determine whether its ruling at the preliminary hearing should finally determine the rights of the parties would be to deny both parties their right to a hearing, to present evidence and to cross-examine witnesses." (*Ibid.*) The trial court's intention to treat a matter as finally decided at the preliminary injunction stage does not necessarily make it so, especially when that intention is made clear to the parties only *after* the adjudication of the preliminary injunction and the entry of judgment, as was the case here.

Nor does the presence of a constitutional question automatically render a matter ripe for a merits-based determination of the parties' rights. (*Star*, *supra*, 8 Cal.App.3d at pp. 739–740 [mere presence of a constitutional issue did not mean preliminary order could be given ultimate effect].) While issues of law may sometimes be ripe for merits-based, final adjudication at the preliminary injunction stage, as was the situation in *Camp,* the case before us bears little resemblance to the procedural posture of *Camp* or the type of legal issue presented to that court.

From the nature of the statute under which provisional relief was sought and from the DFEH's express statements, it was clear the DFEH's investigation of the underlying administrative complaint was ongoing and incomplete. Thus, the petition seeking

provisional relief did not necessarily contain all the factual allegations the DFEH would make when it determined to file a section 12965 civil action on behalf of the complainants after completing its investigation. Nothing in the procedural posture of *Camp* was similar. *Camp* involved the more typical scenario where injunctive relief is sought as a remedy provided for under part two of the Code of Civil Procedure along with ripe and fully pleaded claims for permanent relief. (*Camp*, *supra*, 123 Cal.App.3d at pp. 355–356.) As we explained above, a civil action under section 12974 does not place any claim for permanent relief before the trial court for a merits adjudication.

Moreover, the sole issue of law disputed in *Camp* is nothing like the legal issue presented here. In *Camp*, the parties' dispute revolved around whether a county's general plan validly complied with the requirements of section 65302 in effect in 1978.[9] Resolution "required the trial court to receive the plan into evidence, to examine and interpret it in light of the requirements of the statute, and to decide a question of law without resort to extrinsic evidence." (*Camp*, *supra*, 123 Cal.App.3d at p. 357.) Under these particular circumstances, it was allowable for the hearing on the preliminary injunction to serve as the trial of the claims pending before the court.

---

[9] The case arose from three separate superior court cases filed in 1978 contending the county's general plan was invalid because some of its elements did not meet the requirements of the Government Code. (*Camp*, *supra*, 123 Cal.App.3d at p. 340.) The first case seeking preliminary and permanent injunctive relief was heard and decided by a judge who rejected the contention, determined the plan complied with the Government Code, and entered a judgment that deemed the plan valid and denied relief. (*Id.* at pp. 341–343.)

The other two cases were heard and decided by a different judge, "who reached diametrically opposite conclusions and entered judgments to the effect that the plan was invalid." (*Camp*, *supra*, 123 Cal.App.3d at p. 341.) The validity of the general plan was presented in the second and third cases at a preliminary injunction hearing; preliminary injunctive relief was granted; and permanent injunctive relief was subsequently ordered without a trial on the basis of the preliminary injunction hearing. On appeal, the county argued the permanent relief sought in the second and third cases was granted in the context of a preliminary injunction hearing, which the county maintained exceeded the court's jurisdiction. (*Id.* at pp. 343–347.)

Here, the legal issue decided was whether baking a wedding cake constitutes expressive conduct entitled to free speech protection under the First Amendment, and whether the baker could rightfully be compelled under the UCRA to communicate a message that violated the baker's sincerely held religious beliefs. The trial court's determination that baking a wedding cake constituted expressive conduct was made with reference to the extrinsic facts known to the parties at the time of the preliminary injunction, and it rested, at least in part, on an accepted factual premise that Miller was asked in this instance to use her talents to design and create a custom wedding cake that she had not yet conceived. But the DFEH had not yet completed its investigation about the degree to which Miller actually designed or created a custom cake, among other issues. Tastries argues no facts about how Miller designed or created the wedding cake is relevant; the key factual issues were undisputed and the matter presented was one of law only.

Whether or not any additional facts discovered by the DFEH during its administrative investigation are relevant to deciding this complex constitutional question, it cannot be decided before the DFEH has completed its investigation, fully and formally pleaded its claims for permanent relief on behalf of the complainants, and thus has an opportunity to present every legal argument it wishes to advance about the viability of its claim supported by whatever factual allegations it deems relevant. This need is particularly acute here because, even post-*Masterpiece*, *supra*, ___ U.S. at p. ___ [138 S.Ct. 1719] (which had not been decided prior to the preliminary injunction order in this case), the First Amendment jurisprudence in this area remains unsettled, and it is not a foregone legal proposition that factual disputes about the customization of the wedding cake are immaterial—*i.e.*, that any type of wedding cake, baked under any scenario, is expressive conduct for purposes of the First Amendment.

The First Amendment, which applies to the states through the Fourteenth Amendment, provides that "Congress shall make no law … abridging the freedom of

40.

speech ….." (U.S. Const., 1st Amend.)  The freedom of speech includes the "right to refrain from speaking" and prohibits the government from telling people what they must say.  (*Wooley v. Maynard* (1977) 430 U.S. 705, 714.)  This compelled speech doctrine was developed in *Board of Education v. Barnette* (1943) 319 U.S. 624 (*Barnette*), and it has been applied to prohibit the government from requiring that an individual "speak the government's message," and to preclude the government from requiring an individual "to host or accommodate another speaker's message" (*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.* (2006) 547 U.S. 47, 62, 63).

Though "[t]he First Amendment literally forbids the abridgement only of 'speech,'" the United States Supreme Court has "long recognized that its protection does not end at the spoken or written word." (*Texas v. Johnson* (1989) 491 U.S. 397, 404 (*Johnson*).)  "In deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, [the United States Supreme Court] ha[s] asked whether '[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it.'" (*Ibid.*)

As explained in *Johnson*, the expressive nature of the following have all been recognized:  students' wearing of black armbands to protest American military involvement in Vietnam (*Tinker v. Des Moines Independent Community School. Dist.* (1969) 393 U.S. 503, 504–505); sit-in by Blacks in a "'whites only'" area to protest segregation (*Brown v. Louisiana* (1966) 383 U.S. 131, 133, 141–142); wearing of American military uniforms in a dramatic presentation criticizing American involvement in Vietnam (*Schacht v. United States* (1970) 398 U.S. 58, 60); and picketing about a wide variety of causes (see, e.g., *United States v. Grace* (1983) 461 U.S. 171, 176).  (*Johnson, supra*, 491 U.S. at p. 404.)

The United States Supreme Court has also recognized "the communicative nature of conduct related to flags." (*Johnson, supra*, 491 U.S. at p. 405, citing *Spence v.*

41.

*Washington* (1974) 418 U.S. 405, 409–410; see *Barnette*, *supra*, 319 U.S. at p. 632; *Stromberg v. California* (1931) 283 U.S. 359, 368–369; *Smith v. Goguen* (1974) 415 U.S. 566, 588.) *Johnson* explained, however, that the court has "not automatically concluded … that any action taken with respect to our flag is expressive. Instead, in characterizing such action for First Amendment purposes, we have considered the context in which it occurred." (*Johnson*, *supra*, at p. 405.)[10]

Our nation's high court has not held whether or under what circumstances baking a wedding cake is expressive conduct under the First Amendment. The issue whether a baker's refusal to design and create a wedding cake for a same-sex couple comes within the protections of the First Amendment was presented to the high court in *Masterpiece*, *supra*, \_\_\_ U.S. \_\_\_ [138 S.Ct. 1719], but the court did not decide the baker's free-speech claim—the case was decided under the First Amendment's free exercise clause. Yet, in noting the baker's free speech claim, the court nevertheless signaled that the factual context could be dispositive of the analysis, recognizing that "[o]ne of the difficulties in this case is that the parties disagree as to the extent of the baker's refusal to provide service. If a baker refused to design a special cake with words or images celebrating the marriage—for instance, a cake showing words with religious meaning—that might be different from a refusal to sell any cake at all. In defining whether a baker's creation can

---

[10]    When the government regulates expressive conduct, it must have sufficient justification for doing so and any such regulation or law is subject to varying degrees of scrutiny. Under the more lenient standard, "when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." (*United States v. O'Brien* (1968) 391 U.S. 367, 376.) This test applies if the government would have punished the conduct regardless of the content of its expressive component. (*Clark v. Community for Creative Non-Violence* (1984) 468 U.S. 288, 293.) However, where the message is restricted (or compelled) because of its content, "the most exacting scrutiny[]" applies: that the "'regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end.'" (*Boos. v. Barry* (1988) 485 U.S. 312, 321, quoting *Perry Ed. Assn. v. Perry Local Educators' Assn.* (1983) 460 U.S. 37, 45.)

be protected, these details might make a difference." (*Masterpiece*, *supra*, at p. ___ [138 S.Ct. 1719, 1723].)

In his concurring opinion in *Masterpiece*, which Justice Gorsuch joined, Justice Thomas considered the free speech issue. Justice Thomas concluded a baker's creation and design of custom wedding cakes was expressive conduct, but did so in reference to the facts. While the parties disputed whether the baker had refused to create a custom wedding cake or whether he had refused to sell the same-sex couple *any* wedding cake (including a premade one), Justice Thomas concluded the Colorado Court of Appeals had resolved this factual dispute in the baker's favor by describing the baker's conduct as a refusal to "'design and create a cake to celebrate [a] same-sex wedding.'" (*Masterpiece*, *supra*, ___ U.S. at p. ___ [138 S.Ct. 1719, 1740] (conc. opn. of Thomas, J.).) Justice Thomas explained how Phillip's use of his artistic talents was expressive and intended to send a message:

> "The conduct that the Colorado Court of Appeals ascribed to Phillips [the baker]—creating and designing custom wedding cakes—is expressive. Phillips considers himself an artist. The logo for Masterpiece Cakeshop is an artist's paint palette with a paintbrush and baker's whisk. Behind the counter Phillips has a picture that depicts him as an artist painting on a canvas. Phillips takes exceptional care with each cake that he creates— sketching the design out on paper, choosing the color scheme, creating the frosting and decorations, baking and sculpting the cake, decorating it, and delivering it to the wedding…. [¶] Phillips is an active participant in the wedding celebration. He sits down with each couple for a consultation before he creates their custom wedding cake. He discusses their preferences, their personalities, and the details of their wedding to ensure that each cake reflects the couple who ordered it. In addition to creating and delivering the cake—a focal point of the wedding celebration—Phillips sometimes stays and interacts with the guests at the wedding. And the guests often recognize his creations and seek his bakery out afterward. Phillips also sees the inherent symbolism in wedding cakes. To him, a wedding cake inherently communicates that 'a wedding has occurred, a marriage has begun, and the couple should be celebrated.'" (*Masterpiece*, *supra*, ___ U.S. at p. ___ [138 S.Ct. 1719, 1742–1743] (conc. opn. of Thomas, J.).)

Justice Thomas then discussed how wedding cakes communicate this message to others and concluded that the baker's "creation of custom wedding cakes is expressive." (*Masterpiece*, *supra*, ___ U.S. at p. ___ [138 S.Ct. 1719, 1743, conc. opn. of Thomas, J.)].)[11] Even assuming a majority of the court would agree with Justice Thomas, perhaps this analysis would be affected if the cake requested was not specially designed for the event, but a *stock* cake selected from a lineup of preexisting designs, bearing no particular indicia of a wedding, suitable for any number of occasions, and made repeatedly for any customer who orders it. Costco sells cakes like that, and so does nearly every large grocery store across California. Does it matter if the situation here more closely resembles the order of a grocery store cake or is more akin to the cakes originally designed and created by Phillips, the baker in *Masterpiece*?

Maybe Tastries is right, and it makes no difference at all. But that is not the point. The issue is that the DFEH must be permitted an opportunity to complete its investigation and fully and formally plead its claims to support whatever legal arguments it wishes to make *before* any merits-based decision is reached, especially on an issue where the contours of the legal analysis, and what facts are material to it, are uncertain and unsettled. Anything short of that and the DFEH is deprived of its opportunity to be heard.

When the trial court decided the free-speech issue at the preliminary injunction stage, the court necessarily relied on the factual context as it was known to and presented by the parties at that point, which was before the DFEH finished its investigation and filed a civil action seeking permanent relief. In ruling on Tastries's anti-SLAPP motion

---

[11] The concurrence did not address whether Colorado's public accommodation law requiring the baker to sell custom wedding cakes to same-sex couples survives strict scrutiny—the standard Justice Thomas believed applicable in that case—but noted what Justice Thomas viewed as weaknesses in the asserted justifications for Colorado's law.

in the subsequent section 12965 action, the court recognized its preliminary injunction order was premised on the facts that existed at that time:

> "As discussed above, the court's ruling on the merits of [Tastries's] Free Speech defense was based on a preliminary record. The court agreed that the Government Code contemplated further investigation by the [DFEH] and the potential for further court proceedings upon 'final disposition' of its internal review, whether through a motion for modification of judgment or the new complaint."

The trial court further noted that,

> "The [DFEH] now argues that the facts developed from its continuing investigation show (1) the Rodriguez-Del Rio[] [couple] sought to purchase a cake that, while labeled as 'custom,' was equivalent to a premade, or store-bought display cake, (2) [Tastries] nevertheless refused to sell to them, and (3) [Tastries] had a policy of refusing to supply wedding cakes for same-sex couples regardless of whether or not those cakes were custom, such that Rodriguez-Del Rio[] would not have been able to purchase *any* wedding cake from [Tastries]. In other words, the [DFEH] argues that [Tastries's] actions amounted to a complete denial of goods or services."

The court concluded the DFEH had "supplied sufficient admissible evidence in this respect to substantiate a *prima facie* case if accepted as true (leaving aside conflicting evidence proffered by [Tastries] and making no determination on the merits)."

We highlight this portion of the trial court's order denying Tastries's anti-SLAPP motion to strike the section 12965 complaint to show how the DFEH's further investigation has enabled it to fully plead its case and make arguments it was unable to make or support at the preliminary injunction stage. Whether those arguments are meritorious, we take no position.

Because the free speech analysis may depend upon the resolution of disputed factual issues, this case simply does not fit the exception articulated by *Camp*. Not only was the free speech issue not necessarily a pure question of law referencing no extrinsic facts, but the matter was not yet fully investigated or pleaded. The trial court's

45.

preliminary injunction decision was not a final, merits-based adjudication of the viability of the DFEH's potential future UCRA claim to be pleaded under section 12965.

We decline Tastries's invitation to decide the merits of the DFEH's subsequent section 12965 action currently pending, which Tastries claims is merely an improper re-litigation of the UCRA claim already decided in the section 12974 action. Under Code of Civil Procedure section 909, Tastries urges us to deny the writ petition and end the subsequent case conclusively by admitting additional evidence of the pleadings and all documents related to the anti-SLAPP motion filed in the subsequent section 12965 action. Tastries argues this evidence conclusively establishes that the DFEH's continued investigation revealed no new evidence, which should change the legal result in the subsequent action, and the subsequent action is legally precluded.

This we cannot do. Tastries's argument is premised on the notion the section 12974 action resulted in a merits-based determination on the DFEH's claim which was not appealed, and to which the DFEH assented to the entry of judgment; thus, that decision is final. We have explained at length above why that is not so. We deny Tastries's motion to admit additional evidence—we are not deciding the merits of any claims asserted in the DFEH's section 12965 action, which has yet to be decided by the trial court in the first instance.

## C. Violation of Separation of Powers Doctrine

The DFEH argues that by prohibiting the DFEH from executing its statutory mandate, the trial court's order on the motion to enforce the judgment violated the separation of powers doctrine. Specifically, in its order on the motion to enforce the judgment, the trial court concluded that, while it was required to permit the DFEH to continue its investigation pursuant to statute, "that investigation is undoubtedly proscribed by some degree by the court's judgment. The court having rendered its judgment, the investigation must be tailored to the ascertainment and discovery of facts

46.

reasonably and rationally calculated to serve as the basis for an argument for modification of the judgment."

The court also ruled that to the extent the DFEH's investigation caused it to conclude that further enforcement was necessary, which cannot be informally resolved by the alternative dispute resolution required under section 12965, "any such further proceeding should be brought before this court in the nature of action or petition for modification of the court's original judgment."

The separation of powers principle is embodied in the California Constitution, which provides as follows in article III, section 3: "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution." "'The separation of powers doctrine limits the authority of one of the three branches of government to arrogate to itself the core functions of another branch.'" (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 662.) Although the doctrine is not intended to prohibit one branch from taking action that might affect those of another branch, the doctrine is violated when the actions of one branch "defeat or materially impair the inherent functions of another branch." (*Ibid*.) For example, intrusions by the judiciary into the executive branch's realm of parole matters may violate the separation of powers doctrine. (See *Hornung v. Superior Court* (2000) 81 Cal.App.4th 1095, 1099 [court order allowing inmate to question commissioners regarding their parole-related decision process violated separation of powers].)

The trial court's order on the motion to enforce the judgment violates the separation of powers doctrine because it precludes the DFEH from completing its statutory mandate to investigate an administrative complaint under section 12963, and from filing a section 12965 civil action for permanent relief if it determines a suit is warranted after mandatory dispute resolution has been undertaken. The trial court's conclusion that section 12974 serves as the functional equivalent of a section 12965 civil

47.

action was incorrect, and the court could not properly restrict the DFEH from filing a new civil action under section 12965 or completing its investigation of the administrative complaint. (*California Correctional Peace Officers Assn. v. State of California* (2000) 82 Cal.App.4th 294, 311 [separation of powers doctrine precludes judiciary from assuming superintendence over the law enforcement activities of the executive branch except in extraordinary circumstances].)

### D.      Procedural Concerns

We note, finally, the trial court's concerns about judicial economy and forum shopping that may arise if section 12974 is not considered the functional equivalent of a civil action under section 12965. These issues are important to us, too, but we think ameliorating factors overcome any efficiency or abuse concerns in this context.

The trial court observed in is order on the motion to enforce the judgment that it was not proper for the parties to submit the matter to the court's jurisdiction without objection, "'take the court's temperature,' and then act as if the court's judgment has not been made." The trial court found this tantamount to forum shopping. In its order on Tastries's anti-SLAPP motion in the DFEH's subsequent section 12965 action, the court noted that concluding section 12974 was the functional equivalent of a civil action under section 12965 "was necessary to avoid the absurd potential for nullification of the court's prior ruling as to the applicable legal standard were a new complaint assigned to a different judge."

Our interpretation of section 12974 does not foreclose the possibility that an issue decided in that context could be given issue-preclusive effect in a subsequent section 12965 civil action arising from the same administrative complaint. A different trial judge handling the matter in subsequent litigation is well positioned to determine the preclusive effect of the first judge's ruling.

We believe trial judges skillfully navigate this situation frequently, in many contexts. For example, where a demurrer to a claim is sustained without leave to amend,

48.

that decision is not subject to reconsideration in summary judgment proceedings merely because a different judge is hearing the matter.[12] And, in that vein, the second judge at summary judgment may apply the law to the remaining claims in a manner that would have resulted in their dismissal at the demurrer stage had the first judge interpreted the law in that manner. (*Community Memorial Hospital v. County of Ventura* (1996) 50 Cal.App.4th 199, 205 ["To hold that a trial court is prevented in a motion for summary judgment or adjudication from revisiting issues of law raised on demurrer is to condemn the parties to trial even where the trial court's decision on demurrer was patently wrong."].)

We also find the risk of forum shopping and the potential for waste of judicial resources to be minimal because the venue provision for sections 12974 and 12965 is the same, and the California Rules of Court, as well as most courts' local rules, permit related cases filed in one superior court to be assigned to a single judge or department. (Cal. Rules of Court, rule 3.300.) This case bears that out—the subsequent section 12965 action was assigned to the same trial judge as the section 12974 action.

### E. Conclusion

The trial court's interpretation of a section 12974 civil action as the equivalent of a section 12965 action was incorrect, and its order on the preliminary injunction requested under section 12974 was not a merits-based determination of the merits of the DFEH's UCRA claim to be presented in a civil action under section 12965. Moreover, regardless of the procedural context of the preliminary injunction request, the trial court's decision on it could not constitute a merits-based adjudication of the UCRA claim: the court's order related to an issue of law that was decided with reference to extrinsic factual evidence that had not been fully investigated at the administrative level or fully pleaded

---

[12] There is a method to seek reconsideration of such orders, but mere assignment to a different judge is not a basis for reconsideration. (Code Civ. Proc., § 1008.)

in a claim for permanent relief.  Finally, the court's incorrect construction of its preliminary injunction order as a final, merits-based determination of the DFEH's UCRA claim in its order on the motion to enforce the judgment led the court to circumscribe the DFEH's statutory duties in a manner that violated the separation of powers doctrine.  For these reasons, the trial court's September 13, 2018, order must be vacated.

## DISPOSITION

The petition for writ of mandate is granted.  Let a writ issue directing the superior court to vacate its order dated September 13, 2018, and enter a new and different order denying in full Tastries's motion to enforce the judgment.  The DFEH shall recover its costs.  (Cal. Rules of Court, rule 8.493(a)(1)(A).)


MEEHAN, J.

WE CONCUR:


DETJEN, Acting P.J.


SMITH, J.


50.